IN THE OREGON TAX COURT
REGULAR DIVISION

HALLMARK MARKETING CORP.,
*Plaintiff,*

*v.*

DEPARTMENT OF REVENUE,
*Defendant.*

(TC 4514)

James Gardner, Gardner and Gardner, Attorneys, Portland, and Paul Frankel, Morrison and Foerster, New York, New York argued the cause for Plaintiff (taxpayer).

James Wallace, Assistant Attorney General, Department of Justice, Salem argued the cause for Defendant (the department).

Decision for Defendant rendered, August 13, 2002.

**HENRY C. BREITHAUPT, Judge.**

This case was litigated and decided in the Magistrate Division on the merits, with proceedings and briefing completed prior to June 6, 2000, the date this court issued its decision in *Dept. of Rev. v. IBM Corp.*, 15 OTR 162 (2000). Apparently as a result of the decision in *IBM*, in this division Plaintiff (taxpayer) raised the issue of the timeliness of notices of deficiency issued by the Department of Revenue (the department). By a pre-trial stipulation, the parties agreed that the issue of the timeliness of the department's notices of deficiency should be resolved before other issues are addressed.

This case is the latest in a series of cases[1] involving the application of ORS 314.410 to determine if notices of deficiency issued by the department were timely. The task is made more complex by a set of legislative changes to ORS

---

[1] *Potter v. Dept. of Rev.*, 312 Or 143, 817 P2d 291 (1991); *Swarens v. Dept. of Rev.*, 320 Or 326, 883 P2d 853 (1994); *Dept. of Rev. v. IBM Corp.*, 15 OTR 162 (2000).

314.410, which have occurred in chronological parallel to case law developments.[2] The facts here, typical of the complexity that has faced taxpayers, taxing authorities, and the courts, have been stipulated; established by affidavit or, as discussed below, established at a limited trial held on March 18, 2002, and are as follows:

## FACTS

Taxpayer filed Oregon tax returns on the following dates:

| Tax Year | Date Oregon Returns Filed |
|----------|---------------------------|
| 1987 | October 17, 1988 |
| 1988 | October 18, 1989 |
| 1989 | October 15, 1990 |
| 1990 | October 15, 1991 |

Taxpayer entered into agreements with the Internal Revenue Service (IRS) for the 1987, 1988, and 1989 years extending time limits for notice of deficiency. Taking into account those agreements, the time within which federal notices of deficiency and assessment of tax could occur were as follows:

| Tax Year | Federal Limitation Period |
|----------|---------------------------|
| 1987 | September 30, 1992[3] |
| 1988 | September 30, 1992[4] |
| 1989 | February 28, 1994 |
| 1990 | October 15, 1994 |

Applying ORS 314.410(8), the time periods within which Oregon deficiency notices could have been timely

---

[2] Without drawing any necessary conclusions, the court notes that the 1997 amendments to ORS 314.410(3), Oregon Laws 1997, chapter 100, section 3, appear to be responsive to *Swarens* and the 2001 amendments to that statute, Oregon Laws 2001, chapter 9, section 5, appear to be responsive to *IBM*.

[3] The federal extension agreement for the 1987 year, contained in the stipulation of the parties, was entered into more than three years after the due date of the federal return. Taxpayer has, however, acknowledged that an earlier extension agreement was in effect such that the stipulated federal extension for this year was timely. All other federal extensions occurred within three years of the earliest date on which filing of the original federal returns are deemed filed and therefore were timely. Internal Revenue Code (IRC) § 6501(a), (b)(i), and (c)(4).

[4] The federal extension contains this data, even though the basic federal limitations period would apparently not have expired until October 18, 1992.

given, without regard to the operation of ORS 314.410(3), were therefore as follows:

| Tax Year | Oregon Limitation Period |
|----------|--------------------------|
| 1987 | March 31, 1993[5] |
| 1988 | March 31, 1993[6] |
| 1989 | August 31, 1994[7] |
| 1990 | October 15, 1994[8] |

The IRS audited the federal returns for each year, issuing revenue agent reports (RARs) on the following dates:

| Tax Year | Date of RAR |
|----------|-------------|
| 1987 | July 1, 1992 |
| 1988 | July 1, 1992 |
| 1989 | December 21, 1993 |
| 1990 | December 21, 1993 |

Taxpayer notified the department of the RARs and filed amended Oregon returns, relating to the RARs, on the following dates:

| Tax Year | Date of Notice of RAR and Amended Oregon Return |
|----------|--------------------------------------------------|
| 1987 | June 6, 1995[9] |
| 1988 | June 6, 1995[10] |
| 1989 | December 20, 1995 |
| 1990 | December 20, 1995 |

---

[5] Period of federal extension plus six months. ORS 314.410(8). The computation here and in the following two footnotes assumes a "month" for purposes of ORS 314.410(8) is a full calendar month.

[6] Period of federal extension plus six months. ORS 314.410(8). This assumes measurement from the extension agreement date and not the statutory date. *See* footnote 4 above.

[7] Period of federal extension plus six months. ORS 314.410(8).

[8] Period of three years after filing of return. ORS 314.410(1).

[9] There is a dispute as to whether taxpayer's actions were the required "notification" under the statute. As stated in footnote 12, this Opinion assumes the actions were the required notification.

[10] There is a dispute as to whether taxpayer's actions were the required "notification" under the statute. As stated in footnote 12, this Opinion assumes the actions were the required notification.

In May 1997, the department sent taxpayer an agreement (the First State Extension Agreement) extending the statute of limitations for issuance of Oregon notices of deficiency for the 1987 and 1988 years. For each year, the document purported to extend the period for assessment to December 31, 1997. At the time the First State Extension Agreement was sent to taxpayer, it had not been signed by the department. The First State Extension Agreement was signed by taxpayer during May 1997, returned to the department, and received by the department on May 30, 1997.

Affidavits and testimony of witnesses for the department establish that the First State Extension Agreement was delivered to the department's auditor during the period from June 2 to June 6, 1997, and was signed by the department's auditor on or after June 2, 1997. The date written under that signature was "6/2/95." That date clearly appears to be an error as the document was not signed when it was sent to taxpayer and could not have been signed before its receipt by the department on May 30, 1997.

Affidavits and testimony of the department's auditor establish that (1) he was aware that either on June 6, 1997, or between June 6 and June 12, 1997, the statute of limitations would run against the department for the 1987 and 1988 years, (2) he was anxious to receive the First State Extension Agreement, (3) he signed it immediately on receipt, and (4) during the week of June 9, 1997, he would not have continued planning a trip to taxpayer's headquarters in Kansas City, scheduled for the week of June 16, 1997, if he had not received the extension agreement by Friday, June 6, 1997.

By December 8, 1997, another agreement for extension of the statute of limitations for the issuance of Oregon notices of deficiency (the "Second State Extension Agreement") had been executed by taxpayer and the department. The Second State Extension Agreement applied to the 1987, 1988, 1989, and 1990 tax years and extended the time for issuance of notice of deficiency to March 31, 1998.

On December 23, 1997, the department issued the notices of deficiency for the 1987, 1988, 1989, and 1990 years that generated the pending dispute. Those notices asserted

deficiencies based on grounds different from those contained in the RARs, but Oregon law is clear that this is permitted. *International Health v. Dept. of Rev.*, 269 Or 23, 523 P2d 223 (1974).

## RESOLUTION OF FACTUAL ISSUE ON DATE OF EXECUTION OF FIRST STATE EXTENSION AGREEMENT

The foregoing facts were established by stipulation or uncontested affidavits.[11] The court was concerned that a material factual question existed regarding whether execution by the department of the First State Extension Agreement occurred on or before June 6, 1997.[12] Accordingly, the motions of the parties for partial summary judgment were denied and a brief trial on that issue was held. The court is prepared to make a finding as to that factual issue.

The parties have briefed the question of who has the burden of proof to establish a timely executed extension agreement[13] and whether, or to what extent, presumptions or inferences are available to the party with the burden of proof. The court assumes, without deciding, that the department has the burden of proving timely execution of an extension agreement.[14]

As to presumptions and inferences, taxpayer cites federal cases dealing with those questions. One case in particular, *Thomas T. Mantzel v. Commissioner*, 41 TCM (CCH) 1237 (1981), dealt with facts similar to those present here. In that case the government was shown to have departed from

---

[11] The affidavits of the parties were made part of the record in this matter, without objection, at the trial held March 18, 2002.

[12] The importance of June 6, 1997, would potentially disappear and another later date could become critical if, as the department maintains, the amended return and other filings done on June 6, 1995, did not constitute the notification required to start the two-year period under ORS 314.410(3). Resolution of this case makes it necessary and advisable to put some analytical "stakes in the ground." One such "stake" is the assumption, for purposes of this analysis, that the filings of June 6, 1995, were the notification of federal action contemplated by ORS 314.410(3). At oral argument, taxpayer conceded that it did not assert such notification had occurred any earlier than June 6, 1995.

[13] There is no dispute that the burden is a preponderance of the evidence and no higher standard.

[14] Taxpayer here had the general burden of proof under ORS 305.427.

its policies and procedures relating to processing of agreements extending the statute of limitations for deficiency notices. *Id.* at 1238. The court pointed to that fact in concluding that the government would not be entitled to an inference based on regularity in procedures to establish a timely execution of the extension agreement. *Id.* at 1240.

In *Mantzel,* neither the government nor the taxpayer had dated a signed extension agreement. No date stamp was affixed to show the date of receipt of the agreement by the IRS. The IRS agent did not remember when he had signed the agreement. Nonetheless, the government wanted the court to assume procedural regularity and infer the timely execution of an extension agreement. The government pointed to the absence of a notice of deficiency and its issuance of a second extension agreement as bases for inferring that the first extension agreement must have been timely signed. The government argued that regular procedures would have resulted in a deficiency notice and no second extension agreement if the first extension agreement had not been signed. The court in *Mantzel* refused to make inferences based on presumed procedural regularity because the government had failed to follow its regular procedures in handling Mantzel's case.

Taxpayer appears to argue that *Mantzel* is authority for the proposition that the department may not, in this circumstance, prove the date of execution of the First State Extension Agreement by extrinsic testimonial evidence. Taxpayer cites no Oregon authority preventing the department from proving the date of execution by extrinsic evidence where the date written on the document is clearly a mistake. Even if *Mantzel* is instructive as to what the law in Oregon should be, and even if the department departed from usual procedures, under *Mantzel* the department is not precluded from proving the date of execution by direct evidence or inferences from direct evidence. If applicable, *Mantzel* would only mean that inferences based solely on a presumption of procedural regularity are insufficient. *Mantzel* would be on point if the department attempted to argue that on the basis of the execution of the Second State Extension Agreement **alone**, one could infer that the First State Extension Agreement must have been timely executed.

But here, the department places no particular reliance on the Second State Extension Agreement, and the record contains credible direct evidence that (1) the extension agreement, signed by taxpayer, was received by the department on Friday, May 30, 1997; (2) in the ordinary course, documents received by the department were routed to the department's auditor within one to five business days; (3) the department's auditor was concerned about timely receipt of the First State Extension Agreement; (4) the auditor signed and dated the extension agreement immediately upon his receipt of the document; (5) the auditor signed the document during the period of June 2 through June 6, 1997; and (6) if the department auditor had not received and signed the extension agreement in the week ending June 6, 1997, he would not have continued his plans for travel to taxpayer's headquarters.

Here, unlike the situation in *Mantzel*, where all the government had was an inference based on a presumption of regularity, the inference of execution of the agreement on or before June 6, 1997, is not based only on a presumption of regularity in procedure. Rather, it is based on a constellation of evidence regarding what was done and not done before and after June 6, 1997, all of which together supports this court's finding of fact that the First State Extension Agreement was executed on or before June 6, 1997.[15] This court finds that the department has established the timely execution of the First State Extension Agreement by a preponderance of the evidence. Accordingly a decision on the question of the burden of proof on that matter is unnecessary.

## ISSUE

Did the department issue its notices of deficiency within the time limits of ORS 314.410?

---

[15] The auditor's testimony is consistent with his receipt and signature of the extension agreement on June 2, 1997; a conclusion that would make the dating error one of misidentification of the years. The fact that there was a department date stamp upon receipt of the agreement from the taxpayer and a date consistent with that, except for the year, distinguishes this case from *Mantzel*.

## ANALYSIS

*What Law Applies: The 1995 or 1997 Edition of ORS 314.410?*

The outcome of this case may or may not depend on whether the 1995 or 1997 edition of ORS 314.410(3) is applicable to the dispute, depending on the resolution of other legal issues. The department argues the 1997 edition applies, and that the federal changes were timely because they were made at a time when, in the language of the 1997 edition, "an assessment of tax [was] permitted under any provision of the Internal Revenue Code." Under the 1997 edition, the federal action within federal time limits could serve as the ORS 314.410(3) predicate. The issue would become whether deficiency notices were issued within two years after a notification to the department of those federal actions or within a longer period agreed to under ORS 314.410(6).

Taxpayer contends that the 1995 edition is applicable. If the 1995 edition of ORS 314.410 is applicable, taxpayer argues the provisions of ORS 314.410(3) as interpreted in *Swarens* apply and taxpayer would prevail under its reading of this court's application of *Swarens* in its decision in *IBM*.[16]

For purposes of further analysis, it will be assumed that the 1995 edition set out in full in the Appendix applies to those years.[17]

*Case Background: IBM and Swarens*

The parties acknowledge that this court's decision in *IBM* plays a significant role in the resolution of this case. *See generally Dept. of Rev. v. IBM Corp.*, 15 OTR 162 (2000).[18]

---

[16] Taxpayer recognizes that even if the 1995 edition is otherwise found to apply, the department might prevail under the provisions of Oregon Laws 2001, chapter 9. Given the resolution of the question of application of the 1995 edition, the effect of the 2001 legislation is moot.

[17] And, unless otherwise noted, other references to the Oregon Revised Statutes (ORS) are to 1995.

[18] It might be that Oregon Laws 2001, chapter 9, would neutralize the effect of *IBM*, and the issues presented regarding the decision in *IBM*. However, for the 2001 legislation to have such effect, serious constitutional questions would have to be resolved favorably to the taxpayer. Before resolving such constitutional issues, reconsideration of the statutory issues dealt with in *IBM* is appropriate.

Taxpayer asserts that *IBM* stands for two related propositions: (1) for the "two-years-after notice of federal change" rule of ORS 314.410(3) to apply, federal changes must occur within the three-year period specified in ORS 314.410(1), and (2) not only must federal changes occur within three years, but notice of those changes must be received by the department within the same three-year period.

Both of those propositions put squarely in focus the question of whether *IBM* was a correct application of the decision of the Oregon Supreme Court in *Swarens v. Dept. of Rev.*, 320 Or 326, 883 P2d 853 (1994), and a discussion of *Swarens* is appropriate.

*Swarens* also involved ORS 314.410(3) (the 1989 edition, which remained unchanged in substance through the 1995 edition) and a factual background of typical complexity for cases involving the interrelationships of the federal and Oregon tax systems. *Swarens* was particularly unusual, however, because, although it raised the question of the timeliness of an Oregon tax deficiency notice, it **did not** involve a federal tax deficiency notice. In *Swarens* all federal statutes of limitation on deficiencies for the year in question had expired. Nonetheless, the IRS had examined certain deductions taken in a year for the purpose of determining the validity of a federal refund claim for the same year. The refund claim depended on the claimed deductions being proper. Under federal law, the expiration of limitations periods on deficiency assessments did not bar review of a year in reviewing the refund request. The IRS issued a RAR making upward changes to the income in the year. That adjustment reduced the claimed refund.

Although the federal RAR for the year was, as to a deficiency, untimely under the federal system and untimely under any provision of ORS 314.410, except, perhaps, ORS 314.410(3), it did reflect a "federal change" and a copy of it was delivered to the department. The department asserted that notification of the RAR triggered the application of ORS 314.410(3) and permitted its issuance of a deficiency notice for the base year within two years of such notification.

The Oregon Supreme Court was thus presented with a stark set of facts: notice of a "federal change" arriving in

Salem, unrelated to any timely federal deficiency action, and timely, if at all, only under ORS 314.410(3). The court, analyzing the provisions and history of ORS 314.410(3), held that because the federal RAR was issued at a time when no Oregon statute of limitations on deficiencies was open, it could not serve as the predicate "federal change" in the "notice of federal change plus two years" rule of the statute.

■     *Swarens* thus established that in order for a federal adjustment to trigger ORS 314.410(3), the adjustment had to be made at a time when a deficiency notice could have been timely issued under **Oregon** law. In its discussion of available time frames, the court noted that "[g]enerally, the department must file a notice of deficiency within three years" and then went on to discuss the permissible time frame under ORS 314.410(3). *Swarens*, 320 Or at 329. However, the court variously described ORS 314.410(3) as imposing a requirement that the federal change:

1.   "* * * is made with respect to a year that is open for state tax assessment at the time the correction is made." *Id.* at 330 (describing the taxpayer's contention, of which the court stated "we conclude that taxpayer's reading of the statute is correct").

2.   "* * * must occur within the original limitation period." *Id.* (not stating what the "original limitation period" was).

3.   Cannot be a trigger for a year, "unless that year is open to taxation" or the federal change occurs "at a time within the statute of limitations." *Id.* (referencing clearly to a state, not a federal, time period).

4.   "* * * occurs within the relevant state limitation period." *Id.* at 333 (stated to be "our conclusion").

5.   Be "made by the federal government *within* the statute of limitations." *Id.* at 334.

6.   Be "made before the state statute of limitations has run." *Id.* at 335 (described as the court's conclusion; compare 4 above).

The foregoing demonstrates that the court used various descriptions of its analysis and holding and was not entirely clear as to whether there was only one state limitation period to be considered (the basic three-year period), or

whether any state period for deficiencies, if open, could accommodate a federal change. However, the final statement of the court appears to resolve matters. The court stated:

> "In *this* case, the IRS correction was made more than three years after taxpayer filed his return, which was beyond the *applicable* state limitations period, ORS 314.401(1). Accordingly, the department is barred * * *."

*Id.* at 335 (emphasis added).

That final statement supports a conclusion that, notwithstanding somewhat competing descriptions, the court's focus on a three-year period "in this case" was a specific application (of the basic three-year statute, the only one which could apply) of a more general rule that the court identified as being that the federal correction must come within some "relevant" or "applicable" state statute of limitations. Had the court intended that in all events only the "basic" three-year statute would apply, it presumably would not have referred to "the relevant" or "the applicable" limitation period, but would have simply referred to a three-year period, either directly or by reference to the time period set out in ORS 314.410(1). The "applicable" and "relevant" language supports a conclusion that one must make a choice among the alternatives contained in ORS 314.410: precisely the basic working of that statute generally.

■    *Swarens* construed a version of ORS 314.410 that contained several state limitation periods, of which the three-year period was only one. Nowhere in *Swarens* did the Supreme Court indicate that the three-year period of ORS 314.410(1) had any particular significance other than it was, in that case, the "applicable" or "relevant" period within which a federal correction would have to occur if it was to serve as the basis for application of ORS 314.410(3). The court did not hold that other provisions of ORS 314.410 might not, on different facts, apply to yield a longer state statute of limitations and thus a longer period within which a federal change could trigger the rule of ORS 314.410(3). *Swarens* can be read as permitting a "federal change" to be a predicate for the "two-year notice" rule where the federal change is made at any time when a state deficiency notice could have been timely issued.

Such a reading of *Swarens* is both consistent with the decisional language and the logic of the statutory scheme that *Swarens* addressed. However, it is not the reading given to *Swarens* in *IBM*. Rather, in *IBM* this court concluded that even though a federal correction occurred within the time period stated in ORS 314.410(8) and therefore at a time when a state deficiency notice could have been timely issued, it could not serve as the predicate act for purposes of ORS 314.410(3) because it had not occurred within the ORS 314.410(1) three-year limit.

In *IBM*, unlike *Swarens*, there was a federal extension agreement and a federal change within the extended period. The Oregon deficiency was issued later than six months after the expiration of the federal extension agreement. The deficiency was, however, issued within two years of notification to the department of the federal change. The deficiency was therefore issued outside the ORS 314.410(8) time period but within the ORS 314.410(3) time period, depending on what effect ORS 314.410(8) could have in applying ORS 314.410(3). This court addressed the department's argument on that question when it stated:

> "The department believes that subsection (8) may resurrect the two-year exception available in subsection (3). In its reply brief, the department asked 'the court to recognize that the word "or" in subsection (8) means that [the department] has the longest of eight potential periods within which to issue a notice of deficiency, following a federal extension. If a **timely, federal** adjustment changes federal tax, then the two-year period following notification of the change is one of the potential periods.' However, the department's construction ignores the language of subsection (8) as well as the Oregon Supreme Court's construction of subsection (3) contained in *Swarens*."

*IBM*, 15 OTR at 166 (emphasis added). The department's argument was inconsistent with *Swarens*. The department argued that "timely" **federal** adjustments, measured by **federal** standards, could serve as the predicate action in ORS 314.410(3). By stating its argument as it did, the department made rejection of that argument easy, because *Swarens* clearly looked to **Oregon** standards and **Oregon** time limits

in testing the timeliness of federal action under ORS 314.410(3).

This case presents again the question of what role, if any, the provisions of subsection (8) of ORS 314.410 have under *Swarens*. If *IBM* is followed, subsection (8) can have only one role: it can be one of the periods tested under the "longest of" analysis of the statute. The subsection (8) period would compete with the other periods described in ORS 314.410 for the position of "longest" and in that competition the subsection (3) time frame would be measured by requiring federal changes within the three-year provision of ORS 314.410(1).

However, subsection (8) could have another role as well. Under *Swarens,* it could serve to define a period within which a **state** deficiency notice can be timely issued. So read, it has both stand-alone significance **and**, applying the methodology of *Swarens,* it can be read into subsection (3) for the purpose of determining if a federal correction occurs within "the applicable **state** limitations period." *Swarens*, 320 Or at 335 (emphasis added).

In this case, such a reading would mean that if a federal correction occurred within a **state** statute of limitations period (here the period of the federal extension plus six months defined in ORS 314.410(8)), the ORS 314.410(3) period does not expire until, at least, two years from notification of that federal action. If, before expiration of the two-year period, a state extension agreement is concluded, the time for issuance of a deficiency would be further extended.

What then is the best reading of *Swarens?* Or, stated somewhat differently, what is the best reading of ORS 314.410 as interpreted in the decision in *Swarens*.[19] The choices are: (1) a "narrow" reading, consistent with *IBM* and taxpayer's position, requiring that federal action referred to in ORS 314.410(3) must come within three years (this position incorporates only subsection (1) of ORS 314.410 into a

---

[19] The text and context of ORS 314.410(3) includes prior interpretations of that statute by the Oregon Supreme Court. *See Stephens v. Bohlman*, 314 Or 344, 350 n 6, 838 P2d 600 (1992).

reading of subsection (3) of the statute or (2) a "broader" reading of subsection (3) under which all other subsections of ORS 314.410 both define a time limit **and** may be considered in determining if a federal correction came within a "relevant" state statute of limitations so as to trigger the "two years from notification of federal change" rule of subsection (3).

In analyzing the choices, it is important to observe at the outset that *Swarens* itself incorporated one of the other time periods in ORS 314.410, specifically subsection (1), into subsection (3) of that statute in construing how subsection (3) operated. Incorporation of other subsections into an application of subsection (3) is, therefore, permitted methodology. However, nowhere did the court state in *Swarens* that only subsection (1) could be considered in applying subsection (3). It just so happened that in *Swarens* only subsection (1) was "relevant." In applying ORS 314.410(3) on the facts of *Swarens*, no party could put forward other subsections of ORS 314.410 to determine whether a federal change was made within a state limitations period.

If only subsection (1) may be considered in applying subsection (3) as construed by *Swarens*, highly illogical results occur. For example, in an instance where a taxpayer makes a material understatement of income and would be exposed to a five-year statute of limitations under subsection (2) of ORS 314.410, a federal change (which, under IRC § 6501(e), could be made within six years) would have to occur within the more limited three-year period of subsection (1). That would be true even though notice of a state deficiency could be made during a longer five-year period.

*Swarens* clearly stands for the proposition that, in the case of a material understatement, the federal change must occur within the state limitations period of five years and not the federal period of six years. However, it seems illogical to read *Swarens* as requiring federal action against a taxpayer who materially understates income to occur within three years rather than within the five-year period the state has indicated is "applicable" or "relevant" in such cases. In such a case, the federal government should get no more time than the state to act (and hence should have five and not six years in which to act). But federal action should not be

required to occur in less time than a state auditor would have to set up an adjustment (*i.e.*, be limited to three rather than five years).

Under the "narrow" construction, similar questionable results occur under special rules relating to deferral of residence gain, ORS 314.410(5), and net operating loss carryback situations, ORS 314.410(7). Those extended time periods could apply to independent state notices but would not extend beyond three years the period within which a predicate federal adjustment could be made.

A construction that permits subsection (8) to be incorporated in application of subsection (3) is consistent with the statutory scheme of ORS 314.410, which indicates that subsections may well affect each other or be layered together. For example, extension agreement periods under subsection (6) may be created "prior to the expiration of any period of time expressed in this section for giving of notice of deficiency." An extension agreement under ORS 314.410(6) need not be concluded within the three-year period of ORS 314.410(1). It can be concluded within any of the periods stated elsewhere in ORS 314.410.

■ This court has corrected its prior holdings before. *King Estate Winery, Inc. v. Dept. of Rev.*, 14 OTR 169 (1997), *aff'd*, 329 Or 414, 988 P2d 369 (1999). In this case, the court concludes, on further consideration of the matter, that *Swarens* should be read as permitting the ORS 314.410(3) "two years from notice of federal change" rule to apply where the federal change occurs on a date when, under any of the other provisions of ORS 314.410, a state deficiency notice issued on the same date would have been timely. That construction is both consistent with the general operation of ORS 314.410 and with the fundamental concern addressed in *Swarens*: that **federal** changes occur within time limits defined by **state** and not federal law. It also avoids the illogical results and disregard of portions of state law, which occurs if the three-year period of ORS 314.410(1), coincidentally relevant in *Swarens*, is elevated, without direct support in the holding of *Swarens*, into an exclusive position.

Taxpayer also argues that *IBM* requires not only a federal adjustment within the three-year state limitations

period, but also notification to the state of the federal change within that same three-year period. It is true that this court in *IBM* stated, in part:

> "Because a tax year is open to taxation only within a limited period, it follows that, for the ORS 314.410(3) extension to apply, the IRS correction must be made and notice of that correction received before the state statute of limitations expires."

15 OTR at 164-65.

Taxpayer argues this language, in the context of the focus in the *IBM* decision on the three-year period, means that notice of federal corrections under ORS 314.410(3) must occur within three years of the filing of the return. Two observations are important as to that statement. First, it was *dicta*. In the *IBM* case, the underlying or predicate federal adjustment was, in the court's view, untimely. Therefore, there was no need to resolve the question of how soon notification to the department of that action was required to occur. Second, the statement was made by this court as part of its discussion of the *Swarens'* rule. No absolute requirement of notice within any state limitations period occurs in the statutory language of ORS 314.410(3). The "two-years-after notification of federal change" rule of the legislative language itself defines a state limitation period, measured relative to notification of a federal action. The statute does not express an absolute time limit in which the notification must occur.

■ The holding and logic of *Swarens* does not change matters. As this court observed in its quotations from *Swarens* that preceded and followed the quotation set out above and in its summary immediately following such quotation, what must occur within an open state period of limitations is "an IRS correction." Nothing was said in *Swarens* about any time limit on notification. All that the statute provides is that the state deficiency notice be given within two years of whatever date the department is, in fact, notified of federal changes.

■ Neither the statute nor the interpretation of it contained in *Swarens* require that notice be given to the department within three years. Such an absolute time limit cannot

be implied in the face of clear statutory language that the time limit is relative to the date of a notification made by either the taxpayer or the Internal Revenue Service. If department action was the focus of the statute, it might be logical to place an absolute time limit on the department. It would be incongruous, however, to place an absolute three-year limit on the department where it is the actions of others on which the department must rely. As demonstrated in this case, substantial time may elapse between a federal change and notification to the department of that change. That passage of time is outside the control of the department and within the control of the taxpayer. An absolute time limit would reward a taxpayer that delayed its notification to the department. The statutory language, measuring only from the time of notification, prevents that. This court does not consider the *dicta* in *IBM* regarding a three-year time limit on notification under ORS 314.410(3) as binding or correct.

■        Under the 1995 edition of ORS 314.410[20] and the decision in *Swarens*, the test that this court will apply under the subsection (3) federal change provisions is as follows: (A) was the federal correction made within an open state limitation period, taking into account that multiple sections of ORS 314.410 may apply (*i.e.*, a state extension agreement, if executed within one of the other periods, may further extend the time within which a federal correction may, under **state** law, occur), and if so, (B) was the notice of deficiency given within two years after notification to the department of the federal correction?

*Application of Holdings: ORS 314.410(3) and (8) Tax Year 1987*

The federal changes and corrections occurred on July 1, 1992. At that date, a state deficiency notice would have been timely because, under ORS 314.410(8), the state had until March 31, 1993 (six months following expiration of the federal extension agreement in effect for that year), within which to give a deficiency notice.

Notification[21] to the department of the federal changes and corrections did not occur earlier than June 6,

---

[20] Amendments in 1997 and 2001 may render this analysis outdated.

[21] Given resolution of other issues, the court need not decide if the department's argument, as to whether taxpayer's filings were proper notification, is well taken.

1995, when amended returns were filed. Within two years of that date, that is on or before June 6, 1997, the First State Extension Agreement was executed and effective. That extension agreement made deficiency notices issued on or before December 31, 1997, timely. Accordingly, the deficiency notice issued December 23, 1997, was timely.

*Tax Year 1988*

The federal changes and corrections occurred on July 1, 1992. At that date a state deficiency notice would have been timely because, under ORS 314.410(8), the state had until March 31, 1993 (six months following expiration of the federal extension agreement in effect for that year) within which to give a deficiency notice.

The resolution of the question of notification to the department and timely deficiency notice within two years of that notification is the same for tax year 1988 as for tax year 1987. The deficiency notice issued by the department on December 23, 1997, for the 1988 tax year, was timely.

*Tax Year 1989*

The question of timeliness of the federal action is the same as for the 1987 tax year. The federal action occurred at a time when a state deficiency notice would have been timely under ORS 314.410(8). The question becomes one of application of the notice rules of ORS 314.410(3).

Notification to the department of federal action occurred no earlier than December 20, 1995. Within two years of that date, the department was obliged to either issue a notice of deficiency or obtain an extension. Within that time, the Second State Extension Agreement was executed and extended time for a state notice of deficiency to March 31, 1998. The department's notice of deficiency issued December 23, 1997, was therefore timely.

*Tax Year 1990*

Taxpayer concedes that the federal changes and corrections for this year occurred at a time when a state notice of deficiency would have been timely. Taxpayer also concedes that the department's notice of deficiency, issued on December 23, 1997, was issued within an open state period of limitations, open because the concededly valid Second State

Extension Agreement (executed on or before December 8, 1997, and within two years after notification to the state of a federal change) permitted the state to issue notices of deficiency for tax year 1990 on or before March 31, 1998. The December 23, 1997, notice of deficiency was therefore timely. Taxpayer could prevail on this year only if notification to the state of the federal action had to occur within three years of the original Oregon return filing date. That position, based on *dicta* from *IBM,* has been rejected.

*The Statutory Change Arguments*

The foregoing resolution makes it unnecessary to decide whether the 1995 or 1997 version of ORS 314.410 applies in this case. The 1995 version is the most favorable to taxpayer and even when applying its provisions, the department prevails.

Similarly, the foregoing analysis makes it unnecessary to consider whether the provisions of Oregon Laws 2001, chapter 9, could be applicable so as to validate otherwise untimely deficiency notices.

The deficiency notices of the department were timely as to all years at issue. This case will be continued for resolution of other issues.

# APPENDIX

# THE 1995 EDITION OF ORS 314.410

"Time limit for notice of deficiency. (1) At any time within three years after the return was filed, the department may give notice of deficiency as prescribed in ORS 305.265.

"(2) If the department finds that gross income equal to 25 percent or more of the gross income reported has been omitted from the taxpayer's return, notice of the deficiency may be given at any time within five years after the return was filed.

"(3) The limitations to the giving of notice of a deficiency provided in this section shall not apply to a deficiency resulting from false or fraudulent returns, or in cases where no return has been filed. If the Commissioner of Internal Revenue or other authorized officer of the Federal Government makes a correction resulting in a change in tax for state excise or income tax purposes, then notice of a deficiency under any law imposing tax upon or measured by income for the corresponding tax year may be mailed within two years after the department is notified by the taxpayer or the commissioner of such federal correction, or within the applicable three-year or five-year period prescribed in subsections (1) and (2) of this section, respectively, whichever period expires the later.

"(4) The tax deficiency must be assessed and notice of tax assessment mailed to the taxpayer or authorized representative, who is authorized in writing, within one year from the date of the notice of deficiency unless an extension of time is agreed upon as prescribed in subsection (6) of this section.

"(5) Notwithstanding other provisions of this section, the period for the assessment of any deficiency attributable to any part of the gain realized upon the sale or exchange of the taxpayer's principal residence, as provided in the federal Internal Revenue Code as applicable to the Personal Income Tax Act of 1969, shall not expire prior to the expiration of three years from the date the department is notified by the taxpayer of:

(a)  The cost of purchasing the new residence which the taxpayer claims results in nonrecognition of any part of such gain; or

(b)  The taxpayer's intention not to purchase a new residence; or

(c)  A failure to purchase a new residence within the period prescribed in the federal Internal Revenue Code as applicable to the Personal Income Tax Act of 1969.

"(6)  If, prior to the expiration of any period of time prescribed in this section for giving of notice of deficiency or of assessment, the department and the taxpayer consent in writing to the notice of deficiency being mailed or deficiency being assessed after the expiration of such prescribed period, notice of such deficiency may be mailed or the deficiency assessed at any time prior to the expiration of the period agreed upon. The period so agreed upon may be extended by subsequent agreements in writing made before the expiration of the period agreed upon.

"(7)  In the case of a deficiency attributable to the application to the taxpayer of a net operating loss carryback, notice of such deficiency may be mailed at any time before the expiration of the period within which notice of a deficiency for the taxable year of the net operating loss which results in such carryback my be mailed.

"(8)  Notwithstanding the other provisions of this section, if any taxpayer agreed with the United States Commissioner of Internal Revenue for an extension, or renewals thereof, of the period for giving notices of deficiencies and assessing deficiencies in federal income tax for any year, the period for mailing notices of deficiencies of tax for such years shall be within the limits expressed in subsections (1) to (7) of this section or six months after the date of the expiration of the agreed period for assessing deficiencies in federal income tax, whichever period expires the later.

"(9)  Notwithstanding other provisions of this section, the period for giving notice of any deficiency attributable to any estate, trust, partnership or S corporation-related item shown on the taxpayer's return shall not expire prior to the expiration of three years from the date of filing of the estate, trust, partnership or S corporation return to which the item on the taxpayer's return is related."