U.S. BANCORP AND SUBSIDIARIES,
*Plaintiff,*

*v.*

DEPARTMENT OF REVENUE,
*Defendant.*

(TC 4531)

Trial was held January 28 through 30, 2003, in the courtroom of the Oregon Tax Court, Salem.

William S. Manne, Miller Nash LLP, Portland, argued the cause for Plaintiff (taxpayer).

James C. Wallace, Assistant Attorney General, Department of Justice, Salem, argued the cause for Defendant.

Decision for Defendant rendered October 16, 2003.

**HENRY C. BREITHAUPT, Judge.**

## I. INTRODUCTION

This court has previously considered matters involving notices of assessment and/or deficiency issued by Defendant Department of Revenue (the department) to U.S. Bancorp (taxpayer) for the 1984 through 1992 tax years. *See US Bancorp v. Dept. of Rev.*, 13 OTR 84 (1994) (*Bancorp I*) (reversing assessments of additional tax upon finding that taxpayer's merger was consistent with its regular business activities, that the sale of preferred stock was apportionable business income, and that taxpayer was permitted to file a combined return for 1987); *U.S. Bancorp v. Dept. of Rev.*, 15 OTR 13 (1999) (*Bancorp II*) (finding that *Bancorp I* had determined taxpayer's corporate excise tax liability for the 1984 through 1987 tax years and therefore the doctrine of claim preclusion barred relitigation of taxpayer's corporate excise tax liabilities for the 1984 and 1985 tax years); *U.S. Bancorp v. Dept. of Rev.*, No 991309A, WL 33225366 (2000) (*Bancorp III*) (finding that adjustments made to the property factor were issues the parties might have litigated in former cases and therefore the department was precluded from relitigating taxpayer's corporate excise tax liability for the 1984 through 1987 tax years); and *U.S. Bancorp v. Dept. of Rev.*, 15 OTR 375 (2001) (*Bancorp IV*) (finding that the department

did not have authority to exceed the scope of its published administrative rule by including intangible personal property in the property factor of the apportionment formula).

The pleadings in connection with this case were originally filed in the Magistrate Division. The magistrate entered a partial decision, *Bancorp III*. Thereafter, the case was specially designated to the Regular Division for further consideration. The court granted taxpayer's requests to amend the Complaint,[1] and received the department's subsequent Answer and counterclaim. In *Bancorp IV*, this court entered partial summary judgment in taxpayer's favor. *See* 15 OTR 375.

The case then proceeded to trial on the taxpayer's statute of limitations claim and the department's counterclaim. At trial, taxpayer conceded defendant's counterclaim regarding the application of certain administrative rules in calculating taxpayer's liability under the receipts and property factors of the apportionment calculation. Therefore, the only remaining issue for resolution in this case is taxpayer's statute of limitations claim with respect to the 1988, 1989, and 1992 tax years. Taxpayer makes one limitations claim as to the 1988 and 1989 tax years and another claim that applies to the 1992 tax year and, as an alternative claim, to the 1988 and 1989 years.

## II. FACTS

For the tax years at issue, taxpayer filed Oregon Corporate Excise Tax Returns and amended returns apportioning its income to Oregon using the three-factor apportionment method set forth in ORS 314.280(1).[2] Those returns were filed as follows:

---

[1] On February 27, 2001, the court granted taxpayer's request to amend the Complaint to add a claim alleging that under ORS 314.410 the 1988 through 1992 tax years were closed.

On March 15, 2001, the court granted taxpayer's request to amend the Complaint to properly set forth the court's jurisdiction.

On April 1, 2002, the court denied as moot taxpayer's motion to file a Third Amended Complaint. The court granted taxpayer's motion to file a Fourth Amended Complaint clarifying that the statute of limitations claim applies only to the 1988, 1989, and 1992 tax years.

[2] Unless otherwise noted all references to the Oregon Revised Statutes (ORS) are to 1995.

| Tax Year | Return | Amended Return |
|----------|--------|----------------|
| 1988 | 10/16/1989 | 3/20/1997 |
| 1989 | 10/16/1990 | 3/20/1997 |
| 1992 | 10/18/1993 | - - - - - |

## A.  *1988 and 1989 Years: Facts*

Subsequent to filing the returns, taxpayer and the Internal Revenue Service (IRS) entered into one or more Consents to Extend the Time to Assess Tax (Federal Extensions). The last Federal Extension signed for the tax years 1988 and 1989 was executed on April 8, 1996, and extended the time for the IRS to assess additional tax until September 30, 1997.

On June 29, 1995, the IRS issued to taxpayer a form 4549-A "Income Tax Examination Changes," also referred to as a Revenue Agent's Report (RAR or Form 4549) covering the 1988 and 1989 tax years. Subsequently, taxpayer's federal income tax liability for the 1988 and 1989 tax years was adjusted at the federal level.

The department received from the IRS a form 5402 "Appeals Transmittal Memorandum and Supporting Statement" (Form 5402), and a form 5278 "Statement - Income Tax Changes" (Form 5278) for taxpayer's 1988 and 1989 tax years on May 29, 1997.

On January 14, 1999, taxpayer and the department entered into an Agreement Extending Period of Limitations for Issuing Notice of Deficiency or Refund (State Extension) covering tax years 1988 and 1989.[3] As executed, the State Extension extended the period during which the department could issue Notices of Deficiency (NOD) for the tax years 1988 and 1989 until June 30, 1999.

---

[3] Both parties had signed the State Extension January 14, 1999, when taxpayer signed it. The State Extension was received by the department January 19, 1999. For purposes of this Opinion, the January 14 date will be used for convenience. It is irrelevant whether the date of the State Extension was January 14 or January 19.

On May 25, 1999, the department issued NODs to taxpayer. For the 1988 tax year, the NOD assessed an additional $1.2 million in taxes and interest; the 1989 tax year NOD assessed an additional $1 million in taxes and interest..

B. *1992 Year: Facts*

The last Federal Extension signed for the 1992 tax year was executed on April 14, 1997, and extended the time for the IRS to assess additional tax until September 15, 1998.

Taxpayer concedes that the department did not receive notice of federal changes to the 1992 return earlier than two years before the issuance of the NOD for 1992. Taxpayer also does not contest that the federal changes for 1992 were made within an open-state limitations period other than that described in ORS 314.410(1). The federal correction for 1992 occurred more than three years after the filing of the return for 1992 and therefore outside the limitations period described in ORS 314.410(1).

C. *Facts and Issues Regarding Notification by IRS and Taxpayer*

A critical factual question exists as to whether the department was notified by the IRS of proposed changes to the 1988 and 1989 income tax liability of taxpayer at some date earlier than January 14, 1997—that being a date two years before the department and taxpayer entered into the State Extension. Findings on this matter are found at subheading B of section IV below.

## III.   ISSUE AND ARGUMENTS

The issue before the court is whether the NODs for tax years 1988, 1989, and 1992 were timely issued.

A. *1988 and 1989: Taxpayer's Primary Contention*

As to 1988 and 1989, federal changes were made and included in a federal Form 4549 issued on June 29, 1995. Taxpayer asserts that more than two years before the State Extension was executed, sometime between June 29, 1995 and January 14, 1997, the department was notified by the

IRS of that agency's issuance of federal Form 4549. Therefore, taxpayer concludes that the limitations period under ORS 314.410(3) expired before the State Extension became effective and the NODs for 1988 and 1989 are untimely under ORS 314.410 because no other limitations provision protected the department's actions.[4]

## B.  *1992: Taxpayer's Primary Contention and Alternative Contention for 1988 and 1989*

For the 1992 tax year, and as taxpayer's alternative argument for 1988 and 1989 if it does not prevail on the limitations argument above, taxpayer argues that the 1995 edition of ORS 314.410 applies to this case. Applying the 1995 edition of the statute, taxpayer also argues that this court should reverse its opinion in *Hallmark Marketing Corp. v. Dept. of Rev.,* 16 OTR 69 (2002),[5] and find that the NODs for the tax years at issue were untimely because the federal changes and corrections, the predicate acts under ORS 314.410(3), occurred more than three years following the date the returns in question were filed.

## C.  *Department Contention as to 1988 and 1989*

The department argues that its NODs for 1988 and 1989 were timely issued under a State Extension, which was valid because it was executed within two years of the first notice to the department of federal changes or corrections. The department asserts that under ORS 305.427 the burden of proof falls on taxpayer, as the party seeking affirmative relief, to show some earlier notice made the State Extension invalid. The department contends that taxpayer failed to bear its burden that notice occurred before January 14, 1997.

---

[4] As noted above, unless otherwise indicated the statutes cited are in the 1995 edition. The department has made alternative arguments that later editions apply to support its position. At this point, the court assumes that the 1995 edition applies because if the department is successful within that statutory context the later editions need not be considered.

[5] In *Hallmark*, the court held that to determine whether notices of deficiency issued by the department are timely, the court's inquiry as to ORS 314.410(3) will focus on two issues: (1) was the federal correction made within an open-state limitation period, taking into account that multiple sections of ORS 314.410 may apply; and if so, (2) was the notice of deficiency given within two years after notification to the department of the federal correction.

D. *Department Response to Taxpayer Alternative Contention*

      With respect to taxpayer's alternative argument, the department argues that all NODs in question were timely under 1995 through current editions of ORS 314.410. The department specifically argues that the *Hallmark* analysis is correct and renders the NODs timely, even if the 1995 edition, most favorable to taxpayer, applies.

## IV. ANALYSIS

A. *Statutory Context: Notices of Deficiency, Construction of ORS 314.410(3)*

■■    The time limits within which the department may issue an NOD are defined by ORS 314.410. The basic rule is that "within three years after the return was filed, the department may give notice of deficiency as prescribed by ORS 305.265." ORS 314.410(1). However, the statute also provides a number of exceptions to that rule, which serve to extend the time for department action. At issue in this case are two of those exceptions. Subsection (3) provides a two-year window within which the department may mail a notice of deficiency after receiving notice of a federal correction. It provides, in relevant part:

> "* * * If the Commissioner of Internal Revenue or other authorized officer of the Federal Government makes a correction resulting in a change in tax for state excise or income tax purposes, then **notice of a deficiency** under any law imposing tax upon or measured by income for the corresponding tax year **may be mailed within two years after the department is notified by the taxpayer or the commissioner of such federal correction**, or within the applicable three-year or five-year period prescribed in subsections (1) and (2) of this section, respectively, whichever period expires the later."

(Emphasis added.) Also at issue is subsection (6) which provides for state extensions. It provides:

> "If, prior to the expiration of any period of time prescribed in this section for giving of notice of deficiency or of assessment, the department and the taxpayer consent in writing to the notice of deficiency being mailed or deficiency being assessed after the expiration of such prescribed

period, notice of such deficiency may be mailed or the deficiency assessed at any time prior to the expiration of the period agreed upon. The period so agreed upon may be extended by subsequent agreements in writing made before the expiration of the period agreed upon."

■■ As an initial matter, it is not entirely clear how ORS 314.410(3) is to be read with respect to the "2 years after notice of federal change" provision. The statute does not specify whether the two-year period is from the **earliest** to occur of notice from the commissioner or a taxpayer or the **latest** to occur of notice from the commissioner or a taxpayer. Stated differently, is there only one limitations period stated in this language, and is it commenced by the first notification.[6] However, the legislative history of the provisions supports the view that it is the earliest notice, whether from a taxpayer or the commissioner, which triggers a single two-year period, after which an NOD is untimely under that section.[7] The department does not argue otherwise and for purposes of this opinion, the court will assume that, subject to the requirement of *Swarens v. Dept. of Rev.*, 12 OTR 517 (1993) (requiring federal action be taken within limited times) where applicable, the first notice given under ORS 314.410(3) commences a two-year period of limitation within which the department must either issue an NOD or obtain an extension agreement providing for more time within which it may issue an NOD.[8]

[6] That problem has only been made more complex by the addition in 1999 of language recognizing that a change or correction by another state taxing authority is also to be considered, as well as notification by that state taxing authority. Or Laws 1999, ch 74, § 3.

[7] Prior to 1985, ORS 314.410(3) specified that notification would start a limitations period. The length of that period would be one year if a taxpayer notified the department in accordance with ORS 314.380. Alternatively, a three-year period beginning at the time federal corrections became final would apply if no ORS 314.380 notice was given (and, presumably, the IRS notified the department). Oregon Laws 1985, chapter 602 revised matters to apply a uniform two-year period measured from the federal correction, contained in an audit report, rather than a final adjustment. That legislative history is inconsistent with a reading that a taxpayer would be at risk until the later of a notice by the taxpayer or the commissioner. Under such a reading, a taxpayer could be indefinitely exposed if the commissioner did not give notice. Nothing in the testimony relating to those changes suggests the legislature intended to worsen the position of a taxpayer who did not give notice from such taxpayer's position in pre-1985 law—exposure for a limited time.

[8] It is also possible that during such two-year period other events, such as a further federal extension, might also extend the period for issuance of the NOD.

■ Under the 1995 edition of ORS 314.410, the edition most favorable to taxpayer, a question has also arisen as to the time period within which the predicate federal change or correction must occur. In *Hallmark,* this court held that so long as the federal change or correction occurred at a time when an NOD would have been timely, the predicate federal act had occurred and the time period under ORS 314.410(3) (1995 edition) would not expire until two years after notification to the department of the federal change.

In this case, as to the 1992 year and as an alternative argument as to the 1988 and 1989 years, assuming the 1995 edition of the statute applies, taxpayer urges the court to retreat from *Hallmark* and follow its earlier holding in *Dept. of Rev. v. IBM Corp.,* 15 OTR 162 (2000).[9] That would result in the court adopting a construction of ORS 314.410(3) that would require any federal change or correction to occur within three years of the date a return is filed in order to be the predicate event under ORS 314.410(3).

Having considered taxpayer's arguments, the court adheres to its reasoning and holding in *Hallmark.* Given that, taxpayer has conceded that the question of which edition of the statutes applies is removed from the case. The only years remaining for decision are 1988 and 1989 and the only issue that remains is whether the department was notified of the federal change or correction more than two years before execution of the State Extension on January 14, 1999. To that question, it is now appropriate to turn.

B. *Factual Issue on Department's Notification*

The evidence in this case supports a number of findings:

1. The IRS had possession of a large amount of information regarding taxpayer and the tax years and the time periods at issue in this case, including information on federal changes or adjustments and appeals from such action.

---

[9] Taxpayer questions *Hallmark* only on the issue of when the federal change must occur under ORS 314.410(3). Taxpayer does not urge the court to review its decision on the question of whether an absolute three-year time limit applies to when an NOD is issued.

2. Some of the IRS information related to income tax liability and some related to employment tax liability.

3. Under IRC section 6103(a) the IRS is not permitted to divulge information about a taxpayer except pursuant to specific statutory authority. Under IRC section 6103(d)(1) such authority exists as to certain disclosures to state tax departments or officials subject to certain statutory requirements.

4. Pursuant to IRC section 6103(d)(1), the IRS entered into one or more agreements, the Disclosure Agreements, with the department relating to disclosure of federal tax information. Pursuant to the Information Sharing Agreement, the IRS did send a number of documents to the department relating to taxpayer, including a Form 5402 and a Form 5278 relating to federal changes made for the 1988 and 1989 years. Those forms were received by the department on May 29, 1997.

5. Although denominated "agreements," the Disclosure Agreements created a process for disclosure rather than a binding set of duties on the parties to the document, breach of which would give rise to a remedy. For example, under the governing agreement, the IRS could alter or terminate its performance unilaterally under the Disclosure Agreements due to changes in federal law or "whenever in the administration of Federal * * * laws that action seems appropriate."

6. The Disclosure Agreements contain no time limits within which contemplated disclosure must occur.

7. Notwithstanding language in the Disclosure Agreements that could be read as calling for transmittal of documents in federal cases where disputes were unresolved (unagreed cases), the actual course of conduct of the IRS may well have been to forward documents in unagreed cases, such as taxpayer's unagreed case for the 1988 and 1989 years, only when the disagreements had been resolved.

8. The records of the IRS are inconclusive on the question of whether a notification of proposed changes and adjustments, provided to taxpayer on or about June 29, 1995,

was provided to the department and, if it was provided, whether it was provided before January 14, 1997.

9. The department has nothing it its records indicting receipt of a notification from the IRS prior to the one given to it by the IRS on May 29, 1997. Taxpayer introduced no direct evidence that the department had such notification in its files.

10. The practices and procedures of the department are less than ideal with respect to whether strict attention is given to the provisions of the Disclosure Agreements and handling of documents received.

11. The practices and procedures of the IRS as to document disclosure have been less than ideal in that, for example, bulk transmissions of documents without specific identification of taxpayer involved or type of tax involved appear to have occurred.

12. By letter dated February 14, 1997, and received by the department February 18, 1997, taxpayer notified the department of appeals that taxpayer had filed with respect to federal proposed changes to its federal income tax liability.

## C. *Presumptions*

Taxpayer asserts that official duty existed for the IRS to send the Form 4549 to the department when generated, rather than when administratively resolved, and that taxpayer is entitled to the benefit of a presumption that this duty was performed. Taxpayer admits that the Disclosure Agreements do not contain time requirements but points to evidence of typical time patterns and asks the court to infer that actions here were taken in similar times.

The duty in question, if it exists, was created by the Disclosure Agreements between the department and the IRS. There is no statutory duty requiring the IRS to disclose information. Indeed, the relevant statutes run in the other direction, imposing a duty not to disclose except when certain conditions are satisfied. *See* IRC § 6103. Here, the agreement in question is not a contract capable of enforcement by either party. It permits unilateral and discretionary alteration or

cessation of action by either party.[10] The agreement appears to have been entered into more to guide disclosure and specify the conditions of disclosure than to create rights or bases for remedies in either party. Therefore, the court is of the view that no official duty of the type contemplated by Oregon Evidence Code (OEC) 311(1)(j) existed here. Although IRS officials could make disclosure pursuant to IRC section 6103, neither that statute nor the Disclosure Agreement placed a legal obligation upon them to disclose particular information at a specific time. The IRS had no statutory duty to enter into the Disclosure Agreements and under them would have had no liability to the department for malfeasance or nonfeasance. Where authority exists, but not duty, the predicate fact required by OEC 311(1)(j) does not exist. *State v. Clay*, 332 Or 327, 332, 29 P3d 1101 (2001).

■     Even if taxpayer were to be permitted the benefit of the OEC 311(1)(j), presumption that an "official duty has been regularly performed," the department has the benefit of one or more countervailing presumptions. Chief among those is the presumption that the ordinary course of business has been followed, OEC 311(1)(m), or stated differently, that the department acts with procedural regularity. *J.R. Widmer, Inc. v. Dept. of Rev.*, 261 Or 371, 494 P2d 854 (1972). The department introduced testimony sufficient to establish that in the ordinary course of its administration of the tax laws, documents received from the IRS are placed in appropriate files. Taxpayer sought to establish that the department at times fails to live up to its own policies and that documents are, on occasion, misplaced. Even if those points are conceded, the court is of the view that some instances of sloppy practice are not sufficient to overcome the general presumption of procedural regularity and to require a finding that the department received a notification at a particular time (before January 14, 1997) and then misplaced it.

In summary, it does not appear that taxpayer has the benefit of a presumption based on a duty of the IRS. Even

---

[10] Under section 9.1 of the Revised Agreement on Coordination of Tax Administration, which controls over any implementing agreement, either the IRS or the department may modify or terminate performance "whenever in the administration of Federal or State laws that action seems appropriate."

if taxpayer benefits from such a presumption, a countervailing presumption exists in favor of the department. Under OEC 310, when there are conflicting presumptions, the presumption founded on weightier considerations of policy and logic prevails. If the presumptions are equal in those regards, neither presumption applies. In this case, at best, from taxpayer's point of view, neither presumption applies.

## D.  *Balance of Evidence*

Although it is not established from the evidence and presumptions that the department received the notification in question prior to January 14, 1997, it is also possible that such a notification was sent by the IRS within that time period and misplaced by the department. It is not possible for the court to say that one conclusion was more probable than not. With the evidence in such a position of equipoise, it is necessary to determine which party has the burden of proof on the matter.

## E.  *Factual Issue: Burden of Persuasion*

The question is which party bears the burden of persuasion as to whether the IRS notified the department of changes and corrections to the 1988 and 1989 federal returns before January 14, 1997. Taxpayer asserts this court placed that burden on the department in *Hallmark*. In fact, that Opinion proceeded by assuming, without deciding, the question. This case requires the court to decide the matter without assumptions made for purposes of analysis.

Quite apart from general principles on allocation of the burden of persuasion, in this case a specific statute applies. In matters in this court, ORS 305.427 places the burden of persuasion on the "party seeking affirmative relief." Here taxpayer is not only generally seeking relief from the deficiency assessed by the department, it is also specifically seeking relief on the ground that the department's actions were time barred. The stipulations and other evidence show that the NODs were issued within the period of the State Extension, and that the State Extension was concluded within two years of notification by taxpayer of the federal changes (an event that occurred on February 14, 1997). The record also shows that the NODs issued May 25, 1999, were

issued within two years of an IRS notice that the department concedes it received on May 29, 1997.

With those facts established, a question remains as to whether the department received an earlier notification of federal changes from the IRS, on a date before January 14, 1997. In such a case, it is both required, under ORS 305.427, and appropriate, under general principles relating to allocation of the burden of persuasion, to place on taxpayer the burden of persuasion that notification was given by the IRS to the department before January 14, 1997. Within the meaning of ORS 305.427, taxpayer is seeking affirmative relief in every sense and application of those words. Additionally, such a placement of the burden is consistent with the statutory context of the limitations rules of ORS 314.410, specifically ORS 314.380.

ORS 314.380 imposes a duty on taxpayer to notify the department of federal changes at the time they are proposed.[11] Taxpayer was obviously aware of that statutory requirement because it appears to have referred to it (directly or indirectly in connection with ORS 305.305) in its February 14, 1997, letter to the department. In any case, the obligation of notification by taxpayer existed. Taxpayer has not shown that it discharged the obligation any earlier than February 14, 1997. Taxpayer was obviously aware of the proposed federal changes in 1995 when it received notification from the IRS of those changes. That being true, it would be inappropriate to permit taxpayer to defer notification to the department, an act that would objectively set a starting date on the two-year "clock" of ORS 314.410(3), and later argue that the department has the burden of proving that the IRS did not issue a notification. Taxpayer points to the function of limitations periods in providing certainty as to tax liabilities. That is true. However, it is not equitable for taxpayer to plead for certainty but fail to take acts, required of it under

---

[11] ORS 314.380(2) states, in relevant part:

"If the amount of a taxpayer's federal taxable income reported on a federal income tax return for any taxable year is changed or corrected by the United States Internal Revenue Service or other competent authority, resulting in a change in the taxpayer's net income which is subject to tax by this state, the taxpayer shall report such change or correction in federal taxable income to the department."

ORS 314.380, which would produce such certainty and satisfy a statutory obligation.

■     That conclusion is not inconsistent with federal law, to the extent that body of law is helpful. Cases over the years have been lax in carefully distinguishing between the burden of persuasion and the burden of production on limitations questions. Some cases seem to suggest that the taxing authority bears the burden of persuasion when it shows that an assessment act occurred beyond the basic three-year period permitted for such actions. The current understanding appears to be, however, that although the taxing authority bears the burden of production after a showing that the basic three-year time period has elapsed, the burden of persuasion never shifts from a taxpayer. *Adler v. Commissioner,* 85 TC 535, 540 (1985). Modern cases recognize that the taxing authority can shift the burden of production back to a taxpayer, as to notices given beyond the basic three-year period, by introducing evidence of an extension agreement. The burden of production is then on a taxpayer to show a defect in the extension agreement. Overall, in addition to the defect in the extension agreement issue, a taxpayer bears the ultimate burden of persuasion.

The methodology under Oregon law, as applied in this Opinion, is analogous to the federal methodology. Faced with an NOD issued more than three years after the return was filed, the department had, and met, a burden of production as to the existence of one or more federal or state extension agreements that covered its actions. Taxpayer then had the burden to produce evidence that the last extension agreement, the State Extension, was inoperative because a federal notification had been given to the department on or before January 14, 1997. Both taxpayer and the department produced evidence on that point. However, as discussed above, the evidence produced by taxpayer did not demonstrate, more probably than not, that there was notification of change given to the department on or before January 14, 1997. Because taxpayer bears the burden of proof under ORS 305.427, taxpayer does not obtain the relief of the bar of the statute of limitations.

## V.  CONCLUSION

Taxpayer has conceded that it is not entitled to relief if it has not been established that IRS notice was given to the department on or before January 14, 1997, and the rule of *Hallmark* is applied. The court finds that taxpayer failed to bear its burden of persuasion on the question of a federal notification given earlier than January 14, 1997. The court also declines taxpayer's invitation to reverse its holding in *Hallmark*. Therefore, the position of the department prevails under the 1995 edition of the statutes, the edition least favorable to the department. It is not necessary to consider the department's alternative arguments that later editions of the statutes govern this case.

The NODs issued by the department for the years 1988, 1989, and 1992 were timely. Costs to neither party.