IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Property Tax

KEVIN TOAL                                      )
And DEBRA TOAL,                                 )
                                                )
            Plaintiffs,                         )       TC-MD 120121C
                                                )
        v.                                      )
                                                )
MARION COUNTY ASSESSOR,                         )
                                                )
            Defendant.                          )       **DECISION**

Plaintiffs have appealed the real market value (RMV) of a manufactured home identified

in Defendant's records as Account R108121.  The tax year at issue is 2011-12.  Trial on the

matter was held in Salem on October 29, 2012.  Kevin Toal (Toal) appeared for Plaintiffs.  David

Tompkins (Tompkins), Residential Property Appraiser, Marion County Assessor, represented

Defendant.  Plaintiffs' Exhibits one through 11 and Defendant's Exhibit A were admitted into

evidence at trial.

## I.  STATEMENT OF FACTS

The subject property is a three-bedroom, two-bath, 1763 square-foot double-wide

manufactured home with an 864 square-foot garage on a 0.2 acre (80 feet by 108 feet)

rectangular lot, located in Woodburn, West of the Woodburn outlet stores.  (Def's Ex A at 1-2.)

The manufactured home is a 1993 or 1994 Skyline Lexington of average quality construction.

(Def's Ex A at 1-2; *see* Ptfs' Ex 11.)  Toal testified that Plaintiffs purchased the property in April

2011 for $80,000.  (*See* Compl at 1.).  The list price at the time of Plaintiff's' purchase was

$84,900.  (*See* Ptfs' Ex 11.)  Tompkins' uncontroverted testimony is that prior to Plaintiffs'

purchase, the lender took the subject property back from the previous owner and Plaintiffs

bought the property a month or two later.

Toal testified that at the time of acquisition the property was in need of some "beautification." The listing for the property indicates that the "[h]ome [is] in need of TLC. Sold in AS-IS condition." (Ptf's Ex 11.) The listing reflects the $84,900 asking price. (*Id.*)

The RMV on the assessment and tax rolls for the 2011-12 tax year is $129,760, with $74,500 allocated to the land and $55,260 to the structures. (Compl at 2.) Plaintiffs appealed that value to the Marion County Board of Property Tax Appeals (Board) and the Board sustained the value. (*Id.*) The property's maximum assessed value is $156,050. (*Id.*) Because that number is greater than the property's RMV, the property's assessed value is $129,760. *See* ORS 308.146 (2).[1]

Plaintiffs have requested a reduction in the RMV to $80,000. (Compl at 1.) Plaintiffs base their request on their purchase price, trial testimony, and documentary evidence regarding the sale of ten comparable properties. (Compl at 1; *see* Ptfs' Exs 1-11.) All of the comparable sales involved manufactured homes. (Ptf's Exs at 1-10.) The sales occurred between March 2011 (comparable number one) and June 2012 (comparable number 10), for prices ranging from a low of $53,000 (comparable number 5) to a high of $75,000 (comparable number 8). (*Id.*) Toal's uncontroverted testimony was that eight of Plaintiffs' 10 sales are in the same manufactured home park as the subject property, and three of those eight sales are in the same neighborhood as the subject property. (*See id.*) Tompkins testified that there were no sales in the same manufactured home park near the applicable assessment date of January 1, 2011. *See generally* ORS 308.007. From the testimony and evidence submitted by Plaintiffs, it appears seven of Plaintiffs' 10 comparable sales were bank owned at the time of sale. (Ptfs' Exs at 1-10.) Toal testified that he did not make any adjustments to Plaintiffs' 10 comparable sales.

---

[1] The court's references to the Oregon Revised Statutes (ORS) are to 2009.

Defendant submitted a valuation report that utilized only the comparable sales approach. (Def's Ex A.) Tompkins, who prepared the report, testified that he relied on the sale of three manufactured homes similar in age to the subject property, located on similar size lots and in comparable manufactured home parks, and all within roughly one half mile of the subject property. (*See id*. at 2.) The three comparables sold in January, April, and September 2010 (comparables one through three respectively). (*Id*.) The sale prices ranged from a low of $125,000 (comparable number three) to a high of $144,800 (comparable number one). (*Id*.) Tompkins adjusted his comparables for size, age, and market conditions (*e.g.*, time) and derived adjusted sale prices of $134,800, $127,020, and $123,410, for comparables one through three, respectively (*Id*.) Tompkins testified that the current RMV on the assessment and tax rolls, at $129,760, fell comfortably within the range of his adjusted sale prices and therefore asked the court to sustain the current RMV. (*See id*. at 9.)

## II. ANALYSIS

In Oregon, all real property "not exempt from ad valorem property taxation or subject to special assessment shall be valued at 100 percent of its real market value." ORS 308.232.

RMV is defined in ORS 308.205(1) as follows:

> "Real market value of all property, real and personal, means the amount in cash that could reasonably be expected to be paid by an informed buyer to an informed seller, each acting without compulsion in an arm's-length transaction occurring as of the assessment date for the tax year."

RMV is determined by the particular methods and procedures adopted by the Department of Revenue. ORS 308.205(2). There are three approaches to valuation (income, cost, and sales comparison) that must be considered when determining the real market value of a property. *Allen v. Dept. of Rev.*, 17 OTR 248, 252 (2003); *Gangle v. Dept. of Rev.*, 13 OTR 343, 345 (1995); *see also* OAR 150-308.205-(A)(2)(a) (stating that all three approaches must be

considered, although all three approaches may not be applicable to the valuation of the subject property). Ultimately, the valuation approach to be used is a question of fact to be determined by the court based on the record. *Pacific Power & Light Co. v. Dept. of Rev.*, 286 Or 529, 533, 596 P2d 912 (1979).

As the party seeking affirmative relief, Plaintiffs bear the burden of proving that the subject property's current RMV on the assessment and tax rolls is incorrect. *See* ORS 305.427. Plaintiffs must establish their claim "by a preponderance of the evidence, or the more convincing or greater weight of evidence." *Schaefer v. Dept. of Rev* TC No 4530, WL 914208 at * 2 (July 12, 2001).

The burden of proof requires that the party seeking relief (Plaintiffs in this case) provide evidence to support their argument. The evidence provided must be *competent* evidence of the requested RMV of the property in order to sustain the burden of proof. *Woods v. Dept. of Rev.*, 16 OTR 56, 59 (2002) (citing *King v. Dept. of Rev.* 12 OTR 491 (1993)).

"Competent evidence includes appraisal reports and sales adjusted for time, location, size, quality, and other distinguishing differences, and testimony from licensed professionals such as appraisers, real estate agents and licensed brokers." *Danielson v. Multnomah County Assessor*, TC-MD No 110300D at 7, WL 879285 (Mar 13, 2012). Evidence that is inconclusive or unpersuasive is insufficient to sustain the burden of proof. *Reed v. Dept. of Rev.,* 310 Or 260, 265, 798 P2d 235 (1990).

The value of property is ultimately a question of fact to be determined by the court. *Chart Development Corp. v. Dept. of Rev.*, 16 OTR 9, 11 (2001) (citation omitted). Finally, "the court has jurisdiction to determine the real market value or correct valuation on the basis of the evidence before the court, without regard to the values pleaded by the parties." ORS 305.412.

Toal insists that the $80,000 purchase price, and his ten comparable sales of homes for prices ranging from a low of $53,000 (comparable number 5) to a high of only $75,000 (comparable number 8), along with the condition of the home at the time of acquisition, support Plaintiffs' requested RMV of $80,000. The court disagrees.

As for Plaintiffs' purchase, the sale was close to the January 1, 2011, assessment date, albeit roughly three months after that date. The Oregon Supreme Court has stated that a recent sale of the subject property "is important in determining its market value[,]" the Court went on to qualify that statement by noting that the sale should be a "recent, voluntary, arm's length transaction between a buyer and seller, both of whom are knowledgeable and willing," and that even when those considerations are present, the sales price is merely persuasive and "certainly not conclusive" of the market value of the property. *Kem v. Dept. of Rev.,* 267 Or 111, 114, 514 P2d 1335 (1973). Tompkins testified that the bank took the subject property back from the previous owner and Plaintiffs then bought the property roughly 50 days later. Moreover, there is little to no information on the marketing history for the subject property and Toal stated during his closing argument that the value of the property might be $123,000 if he fixed it up. Plaintiff did not elaborate on that statement nor submit any corroborating documentary evidence.

As for Plaintiffs' comparable sales, Toal did not establish an Oregon assert that he was qualified to value property and all of his comparable sales occurred after the assessment date and lack any adjustments to account for differences between those properties and the subject property.

"Under the sales comparison approach, the value of a property is derived by 'comparing the subject property with similar properties, * * *.' That comparison is based on many factors, and adjustments are made for any differences between the comparable sales and the subject

property * * *." *Magno v. Dept. of Rev.*, 19 OTR 51, 58 (2006) (citations omitted); *see also J. R. Widmer, Inc. v. Dept. of Rev.*, 4 OTR 361, 366 (1971), *aff'd* 261 Or 371, 494 P2d 854 (1972) (noting that sales are seldom comparable in every detail, and adjustments must therefore be considered to account for the differences). If the differences and the adjustments are too great, the sale will not be considered comparable. *See Bend Millwork Co. v. Dept. of Rev.*, 285 Or 577, 592, 592 P2d 986 (1979); *Medical Building Land Co. v. Dept. of Rev.*, 283 Or 69, 78, 582 P2d 416 (1978). The court has explained the adjustment process as follows: "In evaluating the competing evidence, the court looks to the comparability of the different sales and the application of all necessary adjustments for differences. Adjustments are a key component in evaluating properties." *Voronaeff v. Crook County Assessor*, TC-MD No 110361C at 6, WL 1426847 *3 (Apr 25, 2012). "Ideally, if all comparable properties are identical to the subject property, no adjustments will be required. However, this is rarely the case * * *. After researching and verifying transactional data and selecting the appropriate unit of comparison, the appraiser adjusts for any differences." *Karge v. Clackamas County Assessor*, TC-MD No 100167B at 2-3 (Dec 10, 2010) (quoting Appraisal Institute, *The Appraisal of Real Estate* 307 (13th ed 2008)).

Toal presented raw and unadjusted sales data. Three of Toal's 10 sales occurred in calendar year 2012 (comparables number four, nine, and 10), and another four in the last four months of calendar year 2011 (comparables number three, six, seven, and eight). (Ptfs' Exs 1-10.) This court views with some suspicion post-assessment date sales because they represent market transactions that would not have been known to a hypothetical buyer on the applicable assessment date. This is particularly true when the gap between the assessment date and the comparable sales is significant. For example, in *Yarbrough v. Dept. of Rev.*, __ OTR __

(Sep 18, 2012) (slip op at 6), the taxpayer's appraiser presented an opinion of value 18 months after the applicable assessment date and the court stated: "[t]he timing of this valuation leaves an 18 month gap between [taxpayer's appraiser's] valuation and the assessment date for the 2010-11 tax year, and leaves the court to wonder about the nature of the market and comparable sales back on the January 1, 2010, assessment date. Taxpayer failed to provide any meaningful explanation for the gap in time."  Moreover, this court has noted that ORS 308.205(1) "directs the court to determine real market value as of the assessment date using arm's length sale transactions." *Stevens v. Klamath County Assessor*, TC-MD 010429C, WL 833359 *2 (Apr 2002).  Plaintiffs in this case presented no relevant market evidence regarding changes in market conditions between the January 1, 2011, assessment date and their sales in the latter part of 2011 and 2012.

Finally, seven of Toal's 10 comparables were bank sales.  "This court has been reluctant to consider 'foreclosure' sales as 'arm's-length transactions' because they may well involve an element of compulsion on the part of the seller." *Voronaeff v. Crook County Assessor*, TC-MD No 110361C at 7, WL 1426847 (Apr 25, 2012) (citations omitted).  "When nontypical market conditions of sale are involved in a transaction (duress, death, foreclosures, interrelated corporations or persons, etc.) the transaction will not be used in the sales comparison approach unless market-based adjustments can be made for the nontypical market condition." OAR 150-308.205-(A)(2)(c).

In contrast to Plaintiffs' post-assessment date bank purchase and presentation of post-assessment date sales, none of which were adjusted for differences between those properties and the subject and five of which involved an element of duress, Defendant presented a more typical valuation. Defendant utilized three comparable properties located close to the subject, which

Tompkins adjusted for size, age, and time, and concluded with a value range of between $123,410 and $134,800. Based on those adjusted comparable sales, Tompkins requested that the court sustain the current RMV of $129,760.

## III. CONCLUSION

While Plaintiffs' evidence appears, at first blush, compelling enough to warrant some reduction in the value of the subject property, when considered in light of accepted valuation methodology, the court concludes that no reduction in the subject property's RMV is justified, particularly given that Defendant presented persuasive evidence for sustaining the current RMV. Accordingly, the RMV of the subject property, identified in Defendant's records as Account R108121, shall remain undisturbed for the 2011-12 tax year, at $129,760. Now, therefore,

IT IS THE DECISION OF THIS COURT that Plaintiffs' appeal is denied.

Dated this ____ day of December 2012.


DAN ROBINSON
MAGISTRATE


*If you want to appeal this Decision, file a Complaint in the Regular Division of the Oregon Tax Court, by mailing to: 1163 State Street, Salem, OR 97301-2563; or by hand delivery to: Fourth Floor, 1241 State Street, Salem, OR.*

*Your Complaint must be submitted within 60 days after the date of the Decision or this Decision becomes final and cannot be changed.*

*This Decision was signed by Magistrate Dan Robinson on December 7, 2012. The Court filed and entered this Decision on December 7, 2012.*