OREGON STEAM NAVIGATION COMPANY, Respondent, v. WASCO COUNTY, Appellant.

*Appeal from Wasco County.*

1. Assessment of property for taxation, how made.
2. The assessor and clerk alone may revise the assessment made, in what respects.
3. What authority is vested in the County Court over the assessment roll.

THE assessor of Wasco county, in August, 1866, appraised the real and personal property of respondent, assessable in his county, at $349,200, and entered that amount on the assessment roll. Due notice having been given on the last Monday in August, the assessor and county clerk met and publicly examined and corrected the assessment roll ; and no correction or alteration was made in the assessment of plaintiff. In September, the assessor filed the corrected assessment roll with the county clerk, and at the October term, 1866, of the County Court, the assessor under the advice and order of that court, changed the valuation of plaintiff's property, on the assessment roll, from $349,200 to $500,000, upon which at the rate of levy, there was a difference in amount of taxes of $4,147, which sum was paid by plaintiff under protest. Under the demurrer to the answer only one additional fact is necessary : The averment in the answer that the true cash

Oregon Steam Navigation Co. *v.* Wasco County.

value of plaintiff's property was $500,000. Plaintiff insists that Wasco county had no right to demand or receive from plaintiff taxes on any greater sum than $349,200. Defendant claims that the County Court, as the final tribunal, had a full right to increase the valuation of plaintiff's property to its true admitted cash value, $500,000. The action of the County Court in increasing the assessment was had without any notice to respondent or its agents. The Circuit Court sustained the demurrer, and entered a judgment in favor of respondent for the amount paid under protest, to which entry of judgment appellant excepted and appealed to this court.

*William Strong, Esq.*, for respondent.

*James K. Kelly, Esq.*, for appellant.

The points made in briefs of counsel are sufficiently indicated in the opinion.

WILSON, J. The main question submitted is, as to the extent and character of the jurisdiction of the County Court over the assessment roll, after that roll shall have been returned by the assessor. The provisions in the Code, applicable to the case, are these:

*Code, page* 628, *section* 1, *chapter* 2 : "The assessor, after qualifying, etc., shall forthwith proceed and assess all the taxable property, etc., and shall return to such county clerk, etc., such assessment roll, with a full and complete assessment of such taxable property, entered thereon, etc., and said lands and town lots shall be valued at their cash value, taking into consideration the improvements on the land and in the surrounding country, the quality of the soil, etc."

"Section 2. All the personal property shall be valued at its value in cash, etc."

"Section 4. Each assessor shall give three weeks' public notice, etc., that on the last Monday in August the assessor will attend at the office of the county clerk, and, with the

assistance of said clerk, will publicly examine the assessment rolls, and correct all errors in *valuations,* descriptions or qualities of lands, etc. ; and it shall be the duty of the persons interested to appear at the time and place appointed ; and if it shall appear, during such examination, that there is any lands, lots or other property assessed twice, or assessed beyond its actual value, or assessed in the name of a person not the owner thereof, or any lands, etc., not assessed, the county clerk and assessor shall make the proper corrections."

*Code, page* 900, *section* 24, *chapter* 53 : " The County Court of each county shall, at the September term, examine the assessment roll of its county, and shall have power to correct the same, make alterations in the descriptions of lands, &c., upon such roll, &c., and make any other alterations or corrections in such roll as it shall deem necessary to make the same conform to the requirements of this chapter."

From the statutes, the process of assessment and the levy of taxes is this : The county clerk prepares a blank assessment roll ; the assessor, taking that roll, calls upon each tax-payer, takes the oath of each tax-payer, examines the real and personal property ; and from such oath, inspection, location, quality and appearance, makes his judgment as to the cash value of the property, and, presumptively in the presence of the owner, enters that amount upon the assessment roll. After notice of time and place, at which all interested are supposed to attend, the clerk and assessor, as a quasi board of revision and equalization, publicly examine the roll and correct the same as to all errors in valuation, descriptions, qualities of property, as to double assessments, over assessments or persons to whom assessed ; these are the full and only powers of that board. The assessment roll as corrected is filed. At the next session, the County Court examines the roll; corrects the same; alters descriptions of property ; makes such alterations and corrections as shall make the roll conform to chapter fifty-three, and then fixes the rate of levy.

The law relative to the manner and time of making assessments is in chapter two, three hundred pages in advance in the Code of chapter fifty-three, and separated from it by many subjects of legislation in nowise related to taxation, such as common schools, conveyances, corporations, domestic relations, etc.    The assessor must, as indicated above, make up his judgment of the value of property; he is an officer of the county, and entrusted by his fellow citizens with this most important duty, for the reason as is presumed of his special fitness and capacity, and is supposed to properly care for the interests of the county; and his judgment of appraisal of value is a *judicial* act, and can only be called in question as provided by statute, and in the absence of such provision is final.    He should be made responsible for all acts except the exercise of his honest judgment.    The rule of law as to judicial acts, and their revision, is well settled.    4 *Barbour*, 14; 7 *Bar.*, 137; 3 *Denio*, 119, and other numerous authorities.    At the time of assessment the taxpayer is present, and, knowing the valuation made by the assessor, is either presumed to acquiesce in that statement or is so notified thereof that it is his duty to appear at that tribunal, if there be any, fixed by statute for corrections.    If he does not there appear, then any legal act made by that revisory tribunal is as valid concerning his property as though he were present.    The only authority for revision in *valuation*, we deem, is vested in the assessor and clerk, on the last Monday in August, at the clerk's office.    The rule that a party cannot suffer by default until he has had his day in court is fully applicable to proceedings in assessment and taxation.    In *Patten v. Green*, 13 *Cal.*, 329 the full court say: "We think it would be a dangerous precedent to hold that an absolute power resides in the supervisors to tax land as they may choose without giving any notice to the owner.    It is a power liable to a great abuse.    The general principles of law, applicable to such tribunals, oppose the exercise of any such power.    Any degree of strictness of pro-

cedure in these tribunals would be better than to give such arbitrary power to a board as would authorize it, without notice or evidence, or opportunity to the tax-payer to be heard, to increase his taxes indefinitely, without any right of appeal. We hold, therefore, that the action of the board is void in raising the tax." This decision was made under a law *expressly* conferring the power upon the supervisors to " correct any *valuation*, either by *adding* thereto or deducting therefrom." Further, that Court says : " The publication of notice of the sitting of the board amounts to no protection to the owner, for the sessions of the board may be from the first Monday in August to the second Monday in September, and it could scarcely be expected that every tax-payer is to wait upon the board to see if his taxes are increased." It seems, then, that such general notice is there insufficient to warrant the board to increase assessments, though full power exists in the board to do so. Our law is different. The clerk and the assessor constitute the only board who may correct *valuations* by provision of law ; and if law means anything, they can only change by *diminishing* in double assessments, in over assessments ; but nowhere can they increase a valuation once made. We can find no authority in the law conferred upon any tribunal to do so. The assessor made the valuation with a full knowledge of those facts which the law requires should exist to give him the rule for valuation. The clerk may know nothing of them ; and how could a more truthful assessment be made at the court house than was made on the premises, with the property in full view ? If the assessor erred in his judgment how can that quasi board remedy it ? The assessor abides by his decision ; the clerk cannot overrule him, and we find no residuum of authority any where to settle their differences. By our law, the last Monday in August is fixed as the only time when those *interested* must appear and see to their rights in taxation. Upon that day we think the board might change the amount of valuation in the respects above mentioned, and in no other. In *People* v.

*Reynolds*, 28 *Cal.*, 113, upon a very similar question with the one here, the Supreme Court says : "No intendment is to be made in support of the acts of officers of inferior or limited jurisdictions, where it appears that such acts were not *authorized.*" Has there been found in any of the statutes of Oregon, above cited, a single inference indicating that an assessment may be increased ? There is an express provision that it may be lessened, but not a word as to its increase. Acts without authority done by such officers are in the nature of things *coram non judice*, and void. In our State the tax-payer, knowing his assessment and conscious that it cannot be increased, remains at home ; and we fully concur with the two California decisions cited that without further notice, and without authority derived from the law, an increase of valuation stands opposed not only to reason, justice and sound policy, but it is unlawful. In reference to the subject of notice, and general construction of tax laws, see *Blackwell on Tax Title*, *pp.* 14, 41, 46, 144, 146, 251, 302–311. The legislature gives to those tribunals their power and authority. If the legislature say that only such things may be done, then all other acts not therein contained or clearly implied are forbidden. The fault lies with the legislature if the proper tribunals may not increase an assessment manifestly too low. This court cannot make the law, or supply by its opinion what the law makers have designedly or ignorantly omitted. They doubtless presumed that counties would not elect as assessors any but men whose judgment would protect the rights of all the citizens, by placing a true cash value upon property. For his mistakes or ignorance, the voters in a county are measurably responsible. This reasoning as to the acts and authority of the assessor and clerk, in a degree decides the main point, as to the power of a County Court. An express provision, and the only one in the law, authorizes the assessor and clerk to change valuations; and whatever may be the authority vested in the County Court

to change assessment rolls, we think, that court could not exercise such a power as to double an assessment without notice to a tax-payer, either presumed in law, or actual by service. Wholly ignorant of such act the tax-payer might suffer his remedy to pass unimproved, and from no fault of his suffer serious loss. It is unnecessary, but it may be proper enough, to express an opinion as to the power, for correcting an assessment roll, vested in a County Court. In *section* 1, *page* 628, *chapter* 2, *of the Code*, the legislature provides fully as to the manner, time and rules for *affixing valuation* to property, and I find no such provision anywhere else; the officer, too, is clearly named whose sole duty is to make that *appraisal.* The legislature, in *chapter* 2, *section* 4, *page* 628 *of the Code*, provided for *changes* in *valuation*, when two officers were present to guard county interest, when the tax-payer was present, and I think when that corrected roll was filed, all power of the assessor to *change* valuations ceased, and his duty nominally ceased. At the examination thereof, by the County Court, he is expected to be present, to assist that body in making any legal corrections; to inform them as to defective descriptions or displacement of items on the roll; and with that his powers finally ended for that year. In *section* 24, *chapter* 53, *page* 900 *of the Code*, the legislature gave to the County Court its authority over the assessment roll. Change in valuation is not hinted at. The court has power to correct the roll, that does not include the power to change assessments for the words change and correct are not equivalent in meaning; it may change descriptions of property. " And may make any other alterations or corrections in such roll as it shall deem necessary to make the same conform to the requirements of this chapter " [53.] What does chapter 53 authorize or require? Title 1 declares *what property* is taxable; title 2, *where* and *to whom* such property is assessable; title 3, the manner of making assessments, and in section 15 of that title, is the only reference to appraisal, and then it requires the assessor " to appraise it

according to the provisions of the statutes relating thereto," evidently referring to some other statute where such manner was indicated; and to none other than chapter 2d above cited. That valuation was an act fixed elsewhere; it was not one of the requirements of chapter 53, but was one of chapter 2d alone. When made it is final unless provision is expressly made somewhere for its revision.

Evidently the power of the assessor ceases when, having completed the enumeration of assessments, he makes return of the roll and the same is filed in the County Court. (*O. S. N. Co.* v. *City of Portland*, 2 *Oregon R.*; *Col. Life Ins. Co.* v. *Supervisors, &c.*, 24 *Barb.*, 166.)

The assessment roll becomes a record subject only to statutory alterations.

The County Court could change *descriptions*, because expressly authorized to do so; could change the roll to make it conform to any of the formalities or rules of chapter 53, but not so as to conform to those of chapter 2d; for the County Court *may or may not* know the situation, locality, surroundings and qualities of property so assessed. By chapter second, if the assessor do not know he must inform himself of these facts, must swear the owner, make practical examination of the property, must distinguish between the value of articles of even the same species or class. How can the County Court do all this? We are of the opinion that the legislature has given us a defective law in respect to increasing assessments. Such as the laws are, as good citizens, we must accept them until changed, without any right to add thereto or detract therefrom. The County Court was evidently aiming at justice in their acts; undertaking to make the burden of taxation uniformly on all persons, in strict proportion to the cash value of the property by each one owned; but we think the court did not have the authority necessary to increase an assessment.

The judgment is affirmed.