Argued December 8, 1971, affirmed March 9, 1972

J. R. WIDMER, INC. ET AL, *Appellants, v.*
DEPARTMENT OF REVENUE,
*Respondent.*
494 P2d 854

*Robert A. Leedy,* Portland, argued the cause for appellants. With him on the brief were Barzee, Leedy & Tassock, Portland.

*Glen V. Sorensen,* Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Lee Johnson, Attorney General, and Donald C. Seymour, Assistant Attorney General, Salem.

Before O'CONNELL, Chief Justice, and DENECKE, HOLMAN, TONGUE, HOWELL, and BRYSON, Justices.

BRYSON, J.

This appeal involves four separate parcels of land assessed for 1969 tax purposes by the Multnomah County Asssessor. Plaintiffs unsuccessfully challenged the validity of these assessments before the Multnomah County Board of Equalization, then petitioned the Department of Revenue for review of the Equalization

Board's action. ORS 306.515. The Department of Revenue affirmed (Order No. VL 70-242). Plaintiffs then appealed to the Oregon Tax Court, which affirmed the Department of Revenue. Plaintiffs appeal. ORS 305.445.

Plaintiffs' sole contention on appeal is that the assessed valuations placed on the parcels in question are not supported by the evidence.

Defendant responds initially that it is entitled to a presumption "that official duty has been regularly performed. ORS 41.360(15)," and "[t]he plaintiffs have the burden of proving their case by preponderance of the evidence, and plaintiffs must overcome the evidentiary presumption created by ORS 305.427." Before discussing plaintiffs' contentions on the merits, it is necessary to consider which presumptions, if any, are available to the defendant and how they apply in this case.

Before 1907 a t a x p a y e r could challenge the county assessor's valuation with a view to altering the assessed valuation only as far as the County Board of Equalization. No authority to change assessed valuations was conferred upon any tribunal, *Ore. Steam Nav. Co. v. Wasco County,* 2 Or 206, 210 (1867), except, that a petition for a writ of review would lie if "it was made manifest that the board had acted arbitrarily and capriciously, and in total disregard of the record and the evidence, * * *." *Oregon Coal Co. v. Coos Co.,* 30 Or 308, 311, 47 P 851 (1897).

In 1907 the legislature provided the circuit court with broad powers of review and vested in that court the authority to modify the valuation of the Board of Equalization or county assessor. Oregon Laws 1907, ch 266, p 450. No appeal was provided, although the

limited writ of review remained available. *Smith Securities Co. v. Multnomah County*, 98 Or 418, 192 P 654, 194 P 428 (1921). In *Citizens' Nat. Bk. v. Board of Equalization*, 109 Or 669, 676-77, 222 P 341 (1924), this court stated:

"* * * The assessor in fixing a valuation upon the real estate owned by the bank and assessing the same, acted in a judicial capacity, and the assessment-roll when made up by the assessor, as to the valuation and assessment evidenced thereby, had the effect of a judgment as against the bank, unless reviewed or revised in the manner pointed out by law [Citations omitted]."

In 1929 the State Tax Commission was given powers of review over assessments. Oregon Laws 1929, ch 465. Appeals to the circuit court and then the Supreme Court were allowed and were to be de novo. However, in *Appeal of Kliks*, 158 Or 669, 687-88, 76 P2d 974 (1938), this court placed a heavier burden on the taxpayer by establishing a presumption of official rectitude and requiring clear and convincing proof to overcome that presumption:

"* * * Since error is never presumed, the appealing taxpayer has the burden of proof, and since courts always presume, in the absence of evidence to the contrary, that official duty has been properly performed, the appealing taxpayer is met with a presumption of official rectitude. The latter is not a mere legally created makeweight, but is based upon the assessor's superior knowledge of the property of the appellant and of all other property in the district. For the court to acquire like knowledge of values would require extended study. Knowledge of the protesting taxpayer's property alone does not suffice—uniformity requires knowledge of every parcel of property in the assessment district. Invalidation of a single assessment may operate as

the loosing of a stitch which causes the entire fabric to ravel. These circumstances have impelled courts to attach weight to the presumption that the assessor faithfully performed his duty. *Clear and convincing evidence is required to overcome it.* Again much of the work of the assessor is nonjudicial and the doctrine of separation of powers, a practical device for the division of labor, induces courts to hold aloof except where the assessor has ignored his constitutional and statutory duties, inadvertently or otherwise. [Emphasis supplied.]

"Thus, the appellants assumed the burden of proof when they undertook this appeal, and their appeal confronted them with a presumption that the assessor's appraisals had not violated the requirement of relative uniformity. Everything above said, in our opinion, is in harmony with the decisions cited by the appellants: *Clatsop County v. Oregon American Lumber Co.*, 155 Or. 551 (65 P. (2d) 1); *Smith Securities Co. v. Multnomah County, supra; Douglas Land Co. v. Clatsop County*, 87 Or. 462 (169 P. 790); *Weyerhaeuser Land Co. v. Board of Equalization*, 85 Or. 434 (165 P. 1164); *Northern Pac. Ry. Co. v. Clatsop County*, 74 Or. 250 (145 P. 271); *Southern Oregon Co. v. Coos County*, 39 Or. 185 (64 P. 646); *Oregon & Cal. R. R. Co. v. Jackson County*, 38 Or. 589 (64 P. 307, 65 P. 369); and *Oregon Coal & Nav. Co. v. Coos County*, 30 Or. 308 (47 P. 851)."

This case had the effect of limiting the Supreme Court's scope of review. There was, and still is, a presumption that the assessor has faithfully performed his procedural duty (ORS 41.360(15)). However, in light of the present statutes, it is evident that this presumption was not intended to extend to the valuations the assessor placed on property.

Beginning in 1961 the legislature enacted laws dealing specifically with the taxpayers' right of appeal

in tax cases, and the trend has been to equalize the taxpayers' position before the court. In 1965 the legislature enacted into law ORS 305.427:

"In all proceedings before the tax court *and upon appeal therefrom,* a preponderance of the evidence shall suffice to sustain the burden of proof. The burden of proof shall fall upon the party seeking affirmative relief and the burden of going forward with the evidence shall shift as in other civil litigation." (Emphasis supplied.)

Section 5 of Senate Bill 4 (1965), which presented the statute quoted above to the legislature, contained a paragraph which was not enacted into law:

"The tax court shall recognize a rebuttable presumption of validity and correctness to have attached to the final determination of tax or assessed value from which an appeal or other proceeding may be taken to an authority independent of the authority making such first determination. This presumption shall remain with such first determination until the tax liability at issue is finally determined."

This paragraph of Senate Bill 4 would have supported the holding in *Appeal of Kliks, supra.* However, the legislature's rejection of this paragraph, together with the clear wording of ORS 305.427 and 305.445, makes inescapable the conclusion that there is to be no presumption as to the validity of the valuation. The traditional rules of the civil litigation, as in equity, apply.

ORS 305.427 was preceded by ORS 305.445, which also dealt with appellate review of Tax Court decisions and was enacted in 1961. ORS 305.445 provides:

"The sole exclusive remedy for review of any decision or order of the tax court shall be by appeal

to the Supreme Court. Jurisdiction hereby is vested in the Supreme Court to hear and determine all appeals from final decisions and final orders of the tax court, * * *. Such appeals, and the review of final decisions and final orders of the tax court, *shall be in accordance with the procedure in equity cases* on appeal from a circuit court, but without regard to the sum involved. Upon such appeal and review, the Supreme Court shall have the power to affirm, modify or reverse the order or decision of the tax court appealed from, with or without remanding the case for further hearing, as justice may require." (Emphasis supplied.)

The Tax Court, not inconsistent with past decisions of this court, has chosen to avoid what appears to be the direct intention and clear language of the present applicable statutes. The Tax Court, in its opinion, stated:

"The presumption of assessment validity aids the defendant's determination. ORS 41.360(15). The plaintiff has the burden of proving its case by a preponderance of the evidence (ORS 305.427) in the face of this evidentiary presumption."

This statement should be clarified to eliminate the possibility that taxpayers will not be given the review prescribed by statute.

■ ORS 41.360 (15) raises a disputable presumption that official duty has been regularly performed. This presumption does not relate to the correctness of the value ascribed to property by the assessor. It does pertain to the procedural steps established by statute or those outlined by an administrative body not inconsistent with the statutory law.

■ The plaintiff does have the burden of proving its case by a preponderance of the evidence, pursuant to ORS 305.427. The evidentiary presumption of pro-

cedural rectitude benefits the Department, whether it is appealing or responding. The Tax Court (ORS 305.425(1)) and this court (ORS 305.445) review de novo without any presumption as to the correctness of the assessor's valuation.

In *Roseburg Lbr. Co. v. State Tax Com.*, 223 Or 294, 307, 355 P2d 606 (1960), relied upon by the defendant, we stated, "[i]f the evidence heard by the trial court is equally subject to more than one interpretation, the Commission, under its presumption of validity, is entitled to prevail." When *Roseburg Lbr. Co.* was decided, although it is not mentioned in the opinion, ORS 306.555 provided:

> "(1) The review shall be conducted by the circuit court * * *. *The findings and order of the commission shall carry a prima facie presumption of validity,* * * *. [Emphasis supplied.]
> "* * * * * *."

ORS 306.555 was repealed by Oregon Laws 1961, ch. 533.

■ The evidence discloses that all four parcels, situated in Portland, Oregon, are in the same general area of lower East Burnside in East Portland. Parcel 1, referred to as the Hotpoint building, is located in Block 156, East Portland. It consists of a one-story building (100' x 100') on a corner lot of N. E. 7th and Couch, measuring 100' x 188', with a parking area fronting on East Burnside Street. Parcels 3 and 4 consist of two old houses on 30 x 50 foot lots in the same block at the corner of N. E. 8th and Couch. Parcel 2, referred to as the used car lot, is in the block lying westerly of Block 156, and consists of a fenced, black-topped car lot with a small used car office. It measures 100' x 113'.

Parcel one, the Hotpoint building, is a one-story building built about 1926 at a cost of $14,500 to $15,000, which has been remodeled to some extent from time to time, but not structurally. Its dimensions are 100' x 100'. It is subject to a long-term lease to a substantial tenant.

The Hotpoint building has 2,500 square feet in office space, 2,500 square feet in warehouse space, and about 5,000 square feet in display area. The parking area adjacent to the Hotpoint building measures 100' x 88'.

Plaintiffs' sole witness was Walter J. Widmer who, though displaying an extraordinary knowledge of the history of the area, offered little probative evidence to support his claims that the assessments were unsupported. On the contrary, we find in this, and in all the other challenged assessments, the weight of the evidence supports the values originally assigned.

Defendant offered the testimony of two experienced assessors. Both comparative sales and rental bases were used to establish the assessed valuation of the Hotpoint property. All of the evidence of the expert witnesses shows that the valuation was supported by the weight of the evidence.

Five comparative sales were noted of property with Burnside Street frontage. The parcels sold for a square foot value of $4.44, $4.49, $4.17, $5.52, and $4.23. The average, $4.79, supports the $5.00 per square foot value assigned by the assessor for the 100 x 88 foot lot fronting on Burnside Street. This value is strengthened by an analysis of the latter. That sale was bifurcated, and the Burnside frontage sold for $7.37 per square foot.

The testimony was conflicting as to whether the

land values in the area had been on the rise or decline in recent years.

Three sales were used to compare the part of the Hotpoint property that fronts Couch Street. The parcels sold for $3.31, $3.50, and $3.25 per square foot. These sales support the $3.25 per square foot valuation assigned.

Plaintiffs have not met their burden of establishing any error in the valuation.

The used car lot, referred to as parcel 2, occupies 11,300 square feet in Block 147, East Portland, in the block west of the Hotpoint property; both parcels fronting on E. Burnside Street. A few years ago it was occupied by old dilapidated houses. In an effort to upgrade the property, the owner razed the old houses, filled the basements, and black-topped the surface. It was then leased to a used car dealer. A used car office, 24 x 14 feet, and a cyclone fence were constructed on the property and considered as improvements. The comparative sales approach was used as a basis for the valuation of the used car lot and this valuation is supported by the weight of the evidence.

Parcels 3 and 4 abut N. E. Couch Street in the same block as the Hotpoint property, and are improved with two old houses. One of the two subject properties was bought in 1967 for $6,000, which price included a quantity of furniture. The other was bought in 1967 for $5,500. Each is rented with some furnishings for $80 monthly, with the owner furnishing heat and water. The corner house was assessed for $5,800 and the inside house for $6,300.

We conclude that the plaintiffs have failed to meet their burden of proof. The Oregon Tax Court is affirmed.