IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Property Tax

JERRY M. LINSTROM, )
)
Plaintiff, ) TC-MD 200147G
)
v. )
)
LINCOLN COUNTY ASSESSOR, )
)
Defendant. ) **DECISION**

Plaintiff appeals the subject's real market value, maximum assessed value, and

exemption status for the 2019–20 tax year. Appeals of the 2017–18 and 2018-19 tax years were

resolved by the Regular Division in *Linstrom v. Department of Revenue*, TC 5349 (Control), WL

5702134 (September 24, 2020). At trial, Plaintiff was represented by his brother, Tom Linstrom,

who also testified. Defendant was represented by Derek Yost, who called Appraiser Nicholas

Kolen to testify. Plaintiff's Exhibits 4 to 6, 9 to 21, and 23 to 45 were admitted, excluding page

6 of Exhibit 21, and Defendant's Exhibits A to D were admitted.

I. FACTS AND PROCEDURAL HISTORY

The subject is a narrow strip of land on the Siletz River, improved as of the assessment

date with power and water hookups, a shed, a fence, and two docks. (Exs 12 at 2; 15 at 1–4; 16

at 1; 23 at 1.) The available evidence indicates the subject does not qualify for septic approval

and therefore is not eligible for a building permit. (Ex 6 at 1–4.)

In a prior year, the subject's square footage was reduced by more than half to eliminate

the portion below the river's mean high-water line. (Exs 9 at 1; 18 at 3.) At that time, Defendant

reduced the subject's maximum assessed value, a reduction partly offset by the value of a newly

/ / /

installed fence and covered porch. (Ex 18 at 3.) The Regular Division ruled on Plaintiff's challenge to that reduction in *Linstrom*, 2020 WL 5702134 at *10–*13.

The subject is classified by Defendant as 4-0-1 tract property, a property type having a highest and best use as "a suburban or rural homesite." (Ex 5 at 1–4.) Mr. Kolen testified that the subject's classification does not affect its tax roll real market value because the subject is trended with other properties in its geographical area, regardless of classification. For the tax years at issue in *Linstrom*, the Regular Division concluded the subject's highest and best use was for recreational purposes rather than as a homesite, but declined to order a change to the classification because there was no evidence that the classification had affected Defendant's appraisal. *Linstrom*, 2020 WL 5702134 at *2–*4.

Defendant submitted an appraisal of the subject prepared by Mr. Kolen using the comparable sales approach. (Ex C.) The appraisal adjusted 11 comparable sales and concluded to a value for the subject of $77,700 as of January 1, 2019, the amount on the 2019–20 tax roll. (*Id*.) The appraisal was substantially similar to the appraisal of Mr. Kolen's evaluated by the Regular Division in *Linstrom*, with the addition of one more comparable sale and with time trending extended to the 2019–20 assessment date.

Two copies of Plaintiff's application for exemption of the subject as riparian land are in evidence. (Ex 4 at 1–2.) The application states it is "for the assessment beginning July 1, 2018." (*Id*.) Plaintiff's signature is dated December 11, 2018. (*Id*.) Both copies are stamped "RCD ASSESSOR DEC 11'18" in the upper-left corner. (*Id*.) One copy is stamped "RCD ASSESSOR JAN 3'20" in the lower-right corner. (*Id*. at 2.) The application states that no riparian management plan or agreement has been filed with the Oregon Department of Fish and Wildlife.

Additional facts are included where pertinent in the body of this decision.

Plaintiff challenges the subject's property classification, real market value, maximum assessed value, and exemption status. Defendant has requested that the court dismiss Plaintiff's Complaint for lack of evidence of real market value; barring that, Defendant requests the court sustain the tax roll values and assessment.

## II. ANALYSIS

Plaintiff raises four issues regarding the subject: its real market value, its maximum assessed value, its classification, and its qualification for riparian exemption. Because Plaintiff's issues relate to matters decided by the Regular Division in *Linstrom*, the court will first consider whether and to what extent it is precluded by that opinion from deciding Plaintiff's issues. The court will then consider Defendant's motion to dismiss before turning to any remaining issues.

A.     *Issue Preclusion*

"Issue preclusion prevents parties from relitigating issues that were actually litigated and determined in a prior action." *State ex rel. English ex rel. Sellers v. Multnomah Cty.*, 348 Or 417, 431, 238 P3d 980 (2010) (citing *Nelson v. Emerald People's Utility Dist.*, 318 Or 99, 103–04, 862 P2d 1293 (1993)). It can be based on the constitution, common law, or statute. *Nelson*, 318 Or at 103. Because the present case concerns the effect of a judgment of the Regular Division—a court with jurisdiction over tax matters—issue preclusion is here based on statute. *See* ORS 43.130.[1]

A court may be precluded from deciding an issue of ultimate fact if that issue meets five criteria: (1) the issue is identical to the issue in the prior proceeding; (2) the issue was actually

---

[1] The court's references to the Oregon Revised Statutes (ORS) are to 2019 and 2017. The relevant statutes have not substantially changed.

litigated and essential to a final decision on the merits in the prior proceeding; (3) the party sought to be precluded had a full and fair opportunity to be heard on that issue; (4) the party sought to be precluded was a party or was in privity with a party to the prior proceeding; and (5) the prior proceeding was the type of proceeding to which this court will give preclusive effect. *Nelson*, 318 Or at 104.

Here, the issue of maximum assessed value fulfills all five criteria. Plaintiff alleges the subject's 2019–20 maximum assessed value is wrong because Defendant calculated it from the wrong starting point; in other words, because the prior year's maximum assessed value was wrong. But the prior year's maximum assessed value was decided by the Regular Division in *Linstrom*; that identical issue was actually litigated and essential to the final decision, and Plaintiff had a full and fair opportunity to be heard. Accordingly, Plaintiff is precluded from relitigating it here.

The other issues are not identical to the issues previously litigated, although they bear close resemblance. The subject's proper classification and real market value for 2019–20 is not the same ultimate fact as its classification and real market values for 2017–18 and 2018–19. Likewise, the issue of whether Plaintiff's application entitles the subject to a riparian exemption for 2019–20 differs from whether that same application warranted an exemption for 2018–19.

B.     *Motion to Dismiss*

At the close of Plaintiff's presentation of evidence, Defendant moved to dismiss on the ground that Plaintiff had not presented evidence of the subject's real market value. *See* TCR 60.[2] The court took the matter under advisement, and Defendant proceeded to present its case.

---

[2] Pursuant to the Preface of the Magistrate Division rules, the Tax Court Rules (TCR) may be used as a guide to the extent relevant.

For a party to prevail on a motion to dismiss under TCR 60, that party "must demonstrate that the record contains no evidence to support the nonmoving party's claim or claims." *Freitag v. Dept. of Rev.*, 18 OTR 368, 374 (2005).

In this case, although Plaintiff's evidence of real market value was limited, there was some evidence—particularly evidence of the subject's sale price. In addition, Plaintiff presented evidence of an application for riparian exemption to support his other claim. Considering the record as a whole, the court denies Defendant's motion to dismiss and proceeds to weigh the evidence.

C.      *Real Market Value and Classification*

Real market value for tax assessment purposes must be determined in accord with the rules of the Department of Revenue, which recognize three methods: the "sales comparison approach, cost approach, and income approach[.]" ORS 308.205(2); OAR 150-308-0240(2)(a).[3] A recent purchase price of property can be good evidence of its value, provided it is arm's-length and market conditions have not changed in the interim. *Kem v. Department of Revenue*, 267 Or 111, 114, 514 P2d 1335 (1973).

Plaintiff's primary argument for reducing the subject's real market value is as follows. He acquired the property comprising the subject in two purchases totaling $65,000 in 2014 and 2015. He attributes $45,000 of the purchase price to the land, which comprised 10,890 square feet at that time, and derives a per-square-foot land value of approximately $4.13. Plaintiff argues that when 5,852 square feet of land below the mean high-water mark was removed from the account, the subject's value decreased by $24,182.[4]

---

[3] Oregon Administrative Rules (OAR)

[4] Those following along with calculators will note that Plaintiff's conclusion is derived from multiplying the square footage by $4.132231 and then rounding up to the nearest dollar.

Neither the law nor the evidence adequately supports Plaintiff's argument. The evidence before the court does not suffice to isolate the value of the subject's land from that of its improvements at the time of purchase.[5] Even if the land value were known, Plaintiff's method of adjusting for loss of square footage does not conform to a recognized valuation method. *Cf.* OAR 150-308-0240(2)(a). Plaintiff's method assumes that each square foot of the subject has the same marginal value, regardless of its contribution to the use of the property.

Plaintiff's additional evidence of value is a letter from a person not present at trial opining on the value of the docks on the subject property account. (*See* Ex 15.) Apart from the fact that such a letter is hearsay, "[t]he real market value of a unit of property may not be determined from the market price of its component parts" priced separately without regard to being integrated into the total unit. OAR 150-308-0240(2)(b). The separate value of the docks has little bearing on the value of the subject as a whole.

Mr. Kolen's appraisal is an updated summary of the appraisal analyzed in *Linstrom*, 2020 WL 5702134 at *4–*9. It consists of an adjustment grid and tables deriving a time trend from double sales and paired land sales. (Ex C at 1–9.) Adjustments were made for size, time, septic approval, and improvements such as docks, fences, and sheds. (*Id*. at 2–5.) Its conclusion supports the roll value of $77,700. (*Id*. at 1.)

Plaintiff provided exhibits with additional detail on each comparable chosen by Mr. Kolen. (Exs 25–35.) The exhibits contain county records, handwritten notes, and annotated photographs. For example, Comparable 1 sold in 2019 for $91,000 after having sold for $95,000

---

[5] Tax statements for the relevant years were not introduced into evidence, but if such statements reported a land value the court would not presume that value was correct without additional evidence. *See J.R. Widmer, Inc., v. Dept. of Rev.*, 261 Or 371, 377–78, 494 P2d 854 (1972) (court's review is "without any presumption as to the correctness of the assessor's valuation").

in 2018; Mr. Kolen had relied on the 2018 sale and adjusted it to $95,945.  (Ex 25 at 2; Ex C at 2.)  Photographs depicted decks, docks, sheds, walkways, concrete pads, and gates.  Some photographs were captioned with statements referencing adjustments, condition, and construction; for example: "no adjustments", "dock condition & value", and "new walkway (ramp) dock metal."  (Ex 27 at 20; Ex 28 at 14; Ex 29 at 20.)

Although Plaintiff's rebuttal exhibits provide details lacking from Mr. Kolen's appraisal report, it is not clear what effect the features Plaintiff highlights would have on the subject's indicated value.  "[I]t is not enough for a taxpayer to criticize a county's position." *Woods v. Dept. of Rev.*, 16 OTR 56, 59 (2002).  Taxpayers must bear the burden of proof, and to do so they must "establish by competent evidence what the appropriate value of the property was as of the assessment date in question." *Id*.; *see* ORS 305.427.  Plaintiff's rebuttal exhibits do not establish the subject's real market value.

Plaintiff also provided exhibits to support an argument that Defendant is forbidden from relying on Mr. Kolen's appraisal by the "appraisal independence" provisions of the Dodd–Frank Wall Street Reform and Consumer Protection Act, Pub L 111-203, 124 Stat 1376 (2010).  (Exs 13, 14, 37.)  The argument is that Mr. Kolen is disqualified from performing appraisals for Defendant because Mr. Kolen is Defendant's employee.  Even if that interpretation of Public Law 111-203 were not spurious,[6] it would amount to no more than a criticism of Defendant's valuation.  As stated above, taxpayers must do more than criticize the county's position to prevail in this court.  *See Woods*, 16 OTR at 59.

---

[6] The relevant section of Public Law 111-203 requires appraisal independence when engaged "in extending credit or in providing any services for a consumer credit transaction secured by the principal dwelling of the consumer[.]"  15 USC § 1639e(a) (2018).  Plaintiff does not explain how that requirement might apply to an appraisal for tax assessment.

Plaintiff's claim for a change to the subject's classification is ancillary to his real market value claim because it pertains to the subject's highest and best use. *Cf. Linstrom*, TC 5349, 2020 WL 5702134 at *3–4. The evidence does not show that the subject's classification affects its 2019–20 real market value or tax burden. To the contrary, Mr. Kolen testified that the county's trending ignored classification, and his appraisal makes use of properties both with and without septic approval.

Plaintiff's evidence does not warrant lowering the subject's real market value or changing its classification. *See* ORS 305.427. The best evidence of value is Mr. Kolen's appraisal, which supports the roll value.

D.     *Riparian Exemption*

Land designated as riparian by the Department of Fish and Wildlife (ODFW) is exempt from *ad valorem* taxation under ORS 308A.362(6). The ODFW is charged with developing "standards and criteria for the designation of land as riparian." ORS 308A.359(1). Those standards and criteria are laid out in OAR 635-430-0300 to 635-430-0430.

The process for designating land as riparian begins with landowners, who are directed by ORS 308A.356 to apply to the county assessor:

> "An owner of land desiring designation and exemption of that land from ad valorem taxation as riparian land under ORS 308A.350 to 308A.383 shall make application to the county assessor upon forms prescribed by the Department of Revenue and supplied by the county assessor. * * *. Applications to the county assessor shall be made on or before December 31 of the calendar year preceding the first tax year for which such designation is requested. * * *."

ORS 308A.356. Thus, although applications are approved or disapproved by ODFW, the application form is prepared by the Department of Revenue and filed with the county assessor.

The question of how the application reaches ODFW is not explicitly answered by the riparian exemption statutes. ORS 308A.359(1) directs ODFW to make a determination "[u]pon

the receipt of an application referred to it by the county assessor," perhaps implying that the county assessor should forward applications to ODFW. On the other hand, OAR 635-430-0360(1) requires that landowners apply to both the county assessor and ODFW: "A landowner seeking enrollment in the Riparian Land Tax Incentive Program must apply to the applicable county assessor *and the Department* [ODFW]." (Emphasis added.) The instructions on the Department of Revenue's application form direct applicants to "[f]ile with county assessor by December 31 for assessments beginning the following tax year." (Ex 4 at 1–2.)

While it is unclear how an application makes its way to ODFW, it is clear that ODFW has until "April 1 of the year following the year of receipt of the application" to approve or disapprove the application. ORS 308A.362(1). If ODFW does not deny an application by April 1, that application is "deemed approved" and the land is considered as qualifying for riparian designation. *Id*.

Plaintiff's riparian exemption application was "for the assessment beginning July 1, 2018." (*See* Ex 4 at 1–2.) It is the same application on which Plaintiff relied in his claim for 2018–19 riparian exemption, which was rejected by the court in *Linstrom*, 2020 WL 5702134 at *14. Plaintiff signed the application in December 2018 and apparently submitted it to Defendant in December 2018 and again in January 2020. (*See id*.) Neither Plaintiff nor Defendant forwarded the application to ODFW.

Plaintiff argues the subject should be exempt for 2019–20 because he never received notice from ODFW of its approval or disapproval of the application. *See* ORS 308A.362(1). He asserts that he followed both ORS 308A.356 and the instructions on the form by submitting the application to Defendant, and that it was Defendant's duty to refer the application to ODFW. *Cf.* ORS 308A.359(1). Defendant for its part argues that OAR 635-430-0360(1) puts that duty on

landowners.  Defendant further points out that Plaintiff's application was for the 2018–19 tax year rather than 2019–20.

The parties' arguments raise interesting questions.  If Plaintiff is correct that county assessors must forward applications to ODFW, then what is the status of OAR 635-430-0360(1)?  If Defendant has no duty to forward applications, then are the instructions on the Department of Revenue's form incomplete?  However, the court need not answer those questions to resolve this case.

The only application in evidence requests riparian designation for the 2018–19 tax year.  Plaintiff has not provided authority, and none is apparent in the statutes or regulations, requiring ODFW to consider an application requesting riparian designation for one year as if it had requested designation for the following year.  The statutory timetable is set by the year for which designation is requested: applications are due "December 31 of the calendar year preceding the first tax year for which such designation is requested."  ORS 308A.356.  The subsequent April 1 deadline for review by ODFW ensures the land's riparian status is resolved before that first tax year begins on July 1.  The "deemed approved" provision of ORS 308A.362(1) applies to a tax year for which an application has been made.

There is no evidence that Plaintiff applied for riparian designation for 2019–20.  Without an application for the year at issue, there is no relevant application to be "deemed approved" under ORS 308A.362(1).  Plaintiff has not shown the subject qualifies for riparian exemption in 2019–20.

## III.  CONCLUSION

The evidence does not support a court order lowering the subject's real market value, changing its classification, or designating it riparian land for 2019–20.  Plaintiff is precluded

from challenging the subject's maximum assessed value by *Linstrom v. Department of Revenue*, TC 5349 (Control), WL 5702134 (September 24, 2020).  Now, therefore,

IT IS THE DECISION OF THIS COURT that Plaintiff's claims for adjustment to the subject's 2019–20 real market value, classification, and exemption status are denied.

IT IS FURTHER DECIDED that Plaintiff's claim for adjustment to the subject's 2019–20 maximum assessed value is dismissed.

Dated this _____ day of March 2021.


_____
POUL F. LUNDGREN
MAGISTRATE


*If you want to appeal this Decision, file a complaint in the Regular Division of the Oregon Tax Court, by <u>mailing</u> to: 1163 State Street, Salem, OR 97301-2563; or by <u>hand delivery</u> to: Fourth Floor, 1241 State Street, Salem, OR.*

*Your complaint must be submitted within <u>60</u> days after the date of this Decision or this Decision cannot be changed.  TCR-MD 19 B.*

*Some appeal deadlines were extended in response to the Covid-19 emergency. Additional information is available at <u>https://www.courts.oregon.gov/courts/tax</u>*

*This document was signed by Magistrate Poul F. Lundgren and entered on March 9, 2021.*